### BRAWLEY *v.* UNITED STATES.

1. Where a contract is made to sell or furnish certain goods identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse, or all that may be manufactured by the vendor in a certain establishment, or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named, with the qualification of "about," or "more or less," or words of like import, the contract applies to the specific lot, and the naming of the quantity is regarded not as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it.

2. But where no such independent circumstances are referred to, and the engagement is to furnish goods of a certain quality or character to a certain amount, the quantity specified is material, and governs the contract.

3. If, however, the qualifying words, "about," "more or less," and the like, are supplemented by other stipulations or conditions which give them a broader scope or a more extensive significancy, then the contract is to be governed by such added stipulations or conditions.

4. Previous and contemporary transactions and facts may be very properly taken into consideration to ascertain the subject-matter of a contract, and the sense in which the parties may have used particular terms, but not to alter or modify the plain language which they have used.

5. Accordingly, where an agreement was entered into between the United States and a contractor, whereby the latter undertook to deliver at the post of Fort Pembina eight hundred and eighty cords of wood "more or less, as shall be determined to be necessary by the post-commander for the regular supply, in accordance with army regulations, of the troops and employés of the garrison of said post, for the fiscal year beginning July 1, 1871," and the post-commander, as soon as the contract came to his knowledge, and within four days after it was signed, notified the contractor that but forty cords of wood would be required thereon, and forbade his hauling any more to the government yard, — *Held,* that the United States was not liable to the contractor for any number of cords beyond the forty delivered.

APPEAL from the Court of Claims.

This is a petition by Brawley to recover the amount of eight hundred and forty cords of wood, at $3.99 per cord,

which the claimant alleges that he was prepared and ready to furnish, under a contract entered into by the claimant with Lieutenant-Colonel Holabird, Deputy Quartermaster-General United States Army, in May, 1871. The principal article, and that on which the present controversy arises, was in the following words: —

"I. That the said Daniel F. Brawley, his heirs, assignees, administrators, and executors, shall sell, furnish, and deliver, cut and split in lengths of four (4) feet, duly piled or corded under the direction and supervision of the post-quartermaster, within the enclosure of the post of Fort Pembina, Dakota Territory, eight hundred and eighty (880) cords of sound, of first quality, of merchantable oak wood, more or less, as shall be determined to be necessary, by the post-commander, for the regular supply, in accordance with army regulations, of the troops and employés of the garrison of said post, for the fiscal year beginning July 1, 1871, and ending June 30, 1872. The delivery of eight hundred and eighty (880) cords to be completed on or before Jan. 1, 1872; but any additional number of cords of wood that may be required over and above that amount may be delivered from time to time, regulated by the proper military authorities, based upon the actual necessities of the troops for the period above mentioned; provided, that if the wood be less than four (4) feet in length, due allowance shall be made for such shortage by an increased quantity, the cubical contents of the wood being measured in all cases. Delivery on this contract to begin on or before July 15, 1871, unless the time be extended by the commanding officer of the post."

It appears by the findings of the Court of Claims that said contract was entered into in pursuance of an estimate made by the proper officer of the quartermaster's department, and after an advertisement for proposals, upon which the claimant made a bid which was accepted, — the quantity named being eight hundred and eighty cords of wood or more. The bids were opened April 15, 1871. The contract was awarded to the claimant May 6, 1871, but, although dated on that day, was not executed until about the 14th of June. About the 18th of the latter month, the post-commander of Fort Pembina first learned of it, and informed the claimant that but forty cords of wood would be required thereon, and forbade his haul-

ing any more to the government yard. On the 1st of July, written notice was given to him to the same effect.

But "before the contract was signed, the claimant had cut the eight hundred and eighty cords of wood, had taken ten ox-teams, with teamsters, wood-haulers, and supplies from Saint Cloud and Sauk Centre, Minnesota, a distance of three hundred and sixty miles, to Pembina, for the purpose of hauling the wood; and fifty-five cords thereof had been hauled to the fort by permission, and with the understanding that the claimant assumed all risk regarding the acceptance of the same. And twenty cords more were hauled there by him, upon the same understanding, before he received any notice that only forty cords would be received on the contract. Subsequently he hauled eight hundred cords to within about twenty-five rods of the fort, and left the same on the land of Mr. Myrick, because the wood, if left in the forest where it was cut, was in danger of being destroyed by the fires which annually run through that region.

"Forty cords of wood only were received and accepted by the post-commander, and for that the claimant has been paid according to the contract.

"The balance of the wood cut and hauled by the claimant remained where it was deposited by him until the autumn of 1873, when it was sold by said Myrick to one Stiles, a government contractor, for $3.62½ a cord.

"The post of Fort Pembina did not in fact need for the fiscal year commencing July 1, 1871, more than the forty cords of wood which were accepted by the defendant."

The Court of Claims dismissed the petition, and the claimant appealed.

*Mr. John B. Sanborn* for the appellant.

The negotiations between the parties preceding the execution of the contract should be considered in connection with it, in order to ascertain their precise intention at the time of making it. 1 Greenl. Evid., p. 128, sect. 8; id., pp. 129, 130, and authorities cited; *Robinson* v. *Fiske*, 25 Me. 401; *Higgins* v. *Wasgalt*, 34 id. 305; *Metcalf* v. *Taylor*, 36 id. 28; *Wilson* v. *Troup*, 2 Cow. (N. Y.) 196.

In a contract of this character, a specific quantity, if not

designed to be furnished, should not be mentioned.    Fair dealing prohibits it; and the United States, above all others, should deal openly and fairly.

Where the words " more or less " are used in an executory contract in connection with a definite quantity, the law gives them only such force as, may be necessary to relieve the parties from the precise quantity.  A fixed quantity, with these words added in such a contract, can in no case have the force of the words, " so much as may be required." Benj. Sales, 569–571, and authorities cited.

All contracts for supplies for the army are required by law to be made on estimates, and hence for specific quantities.

*The Solicitor-General, contra,* cited *Grant* v. *United States,* 7 Wall. 331; *Gwillim* v. *Daniell,* 2 Cromp., M. & R. 61; *Hayward* v. *Scougall,* 3 Camp. 58; *Pembroke Iron Co.* v. *Parsons,* 5 Gray (Mass.), 589; *Robinson* v. *Noble's Adm'rs,* 8 Pet. 181; *Lobenstein* v. *United States,* 91 U. S. 324.

MR. JUSTICE BRADLEY, after stating the case, delivered the opinion of the court.

From an examination of the authorities, it seems to us that the general rules which must govern this case may be expressed as follows : —

Where a contract is made to sell or furnish certain goods identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse, or all that may be manufactured by the vendor in a certain establishment, or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named with the qualification of " about," or " more or less," or words of like import, the contract applies to the specific lot; and the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it.   In such cases, the governing rule is somewhat analogous to that which is applied in the description of lands, where natural boundaries and monuments control courses and distances and estimates of quantity.

But when no such independent circumstances are referred to,

and the engagement is to furnish goods of a certain quality or character to a certain amount, the quantity specified is material, and governs the contract. The addition of the qualifying words, "about," "more or less," and the like, in such cases, is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure, or weight.

If, however, the qualifying words are supplemented by other stipulations or conditions which give them a broader scope or a more extensive significancy, then the contract is to be governed by such added stipulations or conditions. As, if it be agreed to furnish so many bushels of wheat, more or less, according to what the party receiving it shall require for the use of his mill, then the contract is not governed by the quantity named, nor by that quantity with slight and unimportant variations, but by what the receiving party shall require for the use of his mill; and the variation from the quantity named will depend upon his discretion and requirements, so long as he acts in good faith. So where a manufacturer contracts to deliver at a certain price all the articles he shall make in his factory for the space of two years, " say a thousand to twelve hundred gallons of naphtha per month," the designation of quantity is qualified not only by the indeterminate word "say," but by the fair discretion or ability of the manufacturer, always provided he acts in good faith. This was the precise decision in *Gwillim* v. *Daniell*, 2 Cromp., M. & R. 61, where Lord Abinger says: " The agreement is simply this, that the plaintiff undertakes to accept all the naphtha that the defendant may happen to manufacture within the period of two years. The words, 'say from one thousand to twelve hundred gallons [per month],' are not shown to mean that the defendant undertook, at all events, that the quantity manufactured should amount to so much. If by fraud the defendant manufactured less than he ought to have done, the breach should have been shaped accordingly. Here it does not appear that, in the ordinary course of his manufacture, the defendant ought to have produced a larger quantity than he has done; and we cannot, therefore, say that he has broken his contract."

We think that there is manifest reason . this decision, and

that the present case is within it.  The contract was not for the delivery of any particular lot, or any particular quantity, but to deliver at the post of Fort Pembina eight hundred and eighty cords of wood, " more or less, as shall be determined to be necessary by the post-commander for the regular supply, in accordance with army regulations, of the troops and employés of the garrison of said post, for the fiscal year beginning July 1, 1871." These are the determinative words of the contract, and the quantity designated, eight hundred and eighty cords, is to be regarded merely as an estimate of what the officer making the contract at the time supposed might be required.  The substantial engagement was to furnish what should be determined to be necessary by the post-commander for the regular supply for the year, in accordance with army regulations.  The post-commander, as soon as he learned of the contract, and within four days after it was signed, informed the claimant that but forty cords of wood would be required thereon, and forbid his hauling any more to the government yard.  About a fortnight later, on the 1st of July, 1871, written notice to the same effect was served on the claimant, signed by the post-commander.  And the Court of Claims finds, as a fact, that the post of Fort Pembina did not need for the fiscal year in question more than the forty cords of wood which were accepted by the defendants; thus precluding any plea that, in fixing and determining the amount required, the post-commander was actuated by any want of good faith.

Reference is made to the previous negotiations which led to the making of the contract, the bid of the claimant, the fact that the contract was awarded to him on his bid as early as May, and that, on the faith and expectation that the quantity named would be wanted, he had cut the eight hundred and eighty cords of wood before the contract was signed.

All this is irrelevant matter.  The written contract merged all previous negotiations, and is presumed, in law, to express the final understanding of the parties.  If the contract did not express the true agreement, it was the claimant's folly to have signed it.  The court cannot be governed by any such outside considerations.  Previous and contemporary transactions and facts may be very properly taken into consideration to ascertain the

subject-matter of a contract, and the sense in which the parties may have used particular terms, but not to alter or modify the plain language which they have used.

*Judgment affirmed.*