## ST. LOUIS PAPER-BOX CO. v. J. C. HUBINGER BROS. CO.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1900.)

### No. 1,304.

1. APPEAL AND ERROR—EFFECT OF VERDICT ON APPEAL.
    As to the issues of fact submitted to a jury on the trial of a cause in the circuit court, the verdict of the jury is conclusive on appeal.

2. SALES—CONSTRUCTION OF CONTRACT—NONPERFORMANCE BY VENDOR—REMEDY OF BUYER
    A contract for the sale of 5,000,000 starch cartons provided that, if the vendee should "receive some that are not up to sample herewith attached," he should return them to the vendor, who would replace them. The vendor's first shipment was one of 54,000, which the vendee wholly rejected as not according to sample, and upon the vendor declaring that they were according to the contract, and that he would not take them back, the vendee put them in storage, subject to the vendor's orders, and canceled the contract. *Held*, that the word "some," as used in the contract, meant a small or inconsiderable number, and that the court properly instructed the jury, in an action by the vendor for a breach of the contract, that, if the number of defective cartons went so far beyond what was properly within the commonly accepted meaning of the term "some," it was not the duty of the defendant to return them for replacement.

3. SAME—EVIDENCE.
    Witnesses who worked in defendant's starch factory, and were familiar with the construction and use of starch cartons, were properly permitted to compare the cartons shipped by the plaintiff with the sample attached to the contract, and point out to the jury the differences and various alleged defects in plaintiff's cartons. Whether the cartons had

undergone a change for the worse while in storage, so that they could not fairly be compared, was a question of fact to be determined by the jury under the evidence.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

The St. Louis Paper-Box Company, the plaintiff in error, is a Missouri corporation engaged in the business of manufacturing cartons. The J. C. Hubinger Bros. Company, the defendant in error, is an Iowa corporation engaged in the manufacture of starch, at Keokuk, in that state. The starch is put up for sale in cartons. The parties entered into the following contract:

"St. Louis, Mo., January 12, 1897.

"J. C. Hubinger Brothers Company, Keokuk, Iowa—Gentlemen: We will furnish you with three (3) millions of large starch cartons and two (2) millions of the medium size, as per signed samples herewith attached, at $1.65 and $1.33 per M., respectively. Printed in black and good red ink, as per signed samples, and on the same quality of stock as per samples. The color of stock to be as near the color of stock in samples as possible; that is, will be within the range of colors as per 'color' samples we herewith attach. These prices are f. o. b. St. Louis, Mo. We to have thirty days' notice before starting to ship. Delivery of the above quantity to be made in twelve months, or sooner, if you so desire, but not to exceed 700 M. cartons per month.

"Terms: Thirty days, or 2% off for cash in ten days from date of shipment. No charge for crating, packing, or cartage.

"It is our intention to supply you with such goods that you will have no cause to complain of. In case, however, you should receive some that are not up to samples herewith attached, you to return same to us, and we will replace them.

"Respectfully,                    St. Louis Paper-Box Company,
                                  "Per Oscar H. Vieths, Pres."

"Keokuk, Jan.

"Accepted:   J. C. Hubinger Bros. Co.,
             "By J. C. Hubinger, Prest."

The St. Louis Paper-Box Company brought suit in the court below against the J. C. Hubinger Bros. Company to recover damages for an alleged breach of this contract, averring in its complaint: "That, in compliance with said contract, and relying upon same, plaintiff did, at large expense and labor, undertake said work of supplying the boxes or cartons as by the terms and conditions of the contract required, and did manufacture under said contract, and in accordance with the terms thereof of the sale and purchase by defendant, a large quantity of same, but the defendant, in utter disregard of its contract, and the terms and conditions thereof, refused to receive said boxes or cartons, and declined to pay for same, or carry out the terms of said contract, although plaintiff, in fulfillment of its contract, shipped large quantities to defendant under said contract."

For answer the defendant alleged, in substance: That the plaintiff was the first to commit a breach of the contract. That the first shipment of cartons, numbering about 54,000, were not up to the sample. That the paper out of which they were made was inferior, and their construction so imperfect and defective as to render them worthless for starch cartons. That defendant at once notified the plaintiff of this fact by letter, of which the following is a copy:

"Keokuk, Iowa, April 24th, 1897.

"St. Louis Paper-Box Co., St. Louis, Mo.—Gentlemen: We confirm our message of to-day, reading as follows: 'Boxes are not satisfactory. Countermand order.' We find, upon investigation, that the boxes you shipped us are not fit to use, and you had better send one of your men here at your own expense to look after the matter. We have neither the time nor money to waste on the goods you have sent us. It is very strange that your men should use such poor judgment in material and work as you have done on our

boxes. The contract calls for first-class work and material, and, if you can-not stand up to the agreement, we do not want your boxes, or anything to do with your firm. Kindly investigate this matter, and oblige,

"Yours truly,                                    J. C. Hubinger Bros. Co."

That an agent of the plaintiff visited Keokuk, when the defendant offered to ship the worthless cartons back to the plaintiff, and let them be replaced by cartons such as the contract called for, but that the plaintiff claimed the cartons it had shipped in material and construction were such as the con-tract called for, and refused to take them back, and thereupon the defendant notified the plaintiff the cartons would be stored subject to its order, and that the contract was canceled. The jury found the issues in favor of the defend-ant, and there was judgment accordingly, whereupon the plaintiff sued out this writ of error.

Hiram J. Grover and A. J. McCrary, for plaintiff in error.

John E. Craig and James C. Davis, for defendant in error.

Before CALDWELL and THAYER, Circuit Judges, and ROGERS, District Judge.

CALDWELL, Circuit Judge, after stating the case as above, deliv-ered the opinion of the court.

The gravamen of the complaint was that the plaintiff, in compli-ance with the contract, manufactured a large quantity of cartons, and shipped them to the defendant, "but the defendant, in utter dis-regard of its contract and the terms and conditions thereof, refused to receive" them. The answer denied that the cartons complied with the contract, and averred that they "were absolutely worthless," and could not be used; and that the defendant offered to return them, and the plaintiff refused to receive them, whereupon the defendant noti-fied the plaintiff they were in its storehouse, subject to the plaintiff's order. In a word, the plaintiff claimed the cartons shipped complied with the contract, and that the defendant was bound to retain and pay for them. On the other hand, the defendant claimed they did not comply with the contract, and that it was not bound to retain and pay for them. This was the sharply-defined issue,—the storm center in the case. When the plaintiff insisted the cartons complied with the contract, and declared it would not receive them back, the defendant was justified, if they did not comply with the contract, in storing them as it did, subject to the plaintiff's order. The defendant was not required to ship the cartons back to the plaintiff in the face of its declaration that it would not receive them. Moreover, the con-tract did not require the defendant to return a shipment of boxes the whole or greater part of which were defective. And, if the plain-tiff claimed the shipment of cartons complied with the contract, and a large part of them were defective, and fell below the contract standard, the defendant had a right to cancel the contract, and store the cartons subject to the plaintiff's order. When it was developed that there was an irreconcilable difference between the parties as to the quality of cartons called for by the contract, it would have been a vain thing for the plaintiff to make and ship cartons which the de-fendant would not receive. There was then nothing left for the parties to do but to appeal to a court for a judicial determination of the question whether the cartons shipped complied with the contract,

and were such as the defendant ought to have received. Each party staked its case upon this issue, and the plaintiff lost. This, as well as all other issues of fact, are foreclosed by the verdict of the jury.

But it is earnestly contended by the learned counsel for the plaintiff in error that the court erred in its interpretation of this clause of the contract, namely:

"It is our intention to supply you with such goods that you will have no cause to complain of. In case, however, you should receive some that are not up to samples herewith attached, you to return same to us, and we will replace them."

The court told the jury that:

"This sentence obligates the defendant company to return to the plaintiff company such cartons, and it then becomes the plaintiff company's right and duty and obligation to replace them with other ones; that is, in case some of the goods sent are not up to the samples attached. It becomes necessary, then, to decide upon what is meant by the word 'some.' Suppose every box or carton of the 54,000 which were delivered had been defective, would there be on the defendant the duty to return the entire shipment to plaintiff, that it might replace all of said shipment? Manifestly, if one, or merely a few, were defective, instead of the entire amount, or if there should be ten, or fifteen, or fifty defective, it would be the duty of the defendant to return them to the plaintiff, so that they might be replaced. But suppose, as is contended by the defendant, although denied by the plaintiff, that nearly all, or by far the larger amount, of the 54,000 are defective, is the defendant bound to return them to the plaintiff? How far is this to be applied? As I understand the term 'some,' it does not mean all, or substantially all. If I have your permission to take some apples from a basket, you would not expect to learn that I had taken all, or substantially all, of them. I might take one out of the basket, and you would not ordinarily understand it to be some (yet it might be accepted as being some); but, if I were to take a half dozen, I certainly would have taken some. To what, in ordinary language, the term 'some' will apply or will not apply, and what its commonly accepted meaning is, I will not undertake to accurately define to you. You, gentlemen, are familiar with the language used in ordinary everyday life, and I can only say to you, in my judgment, that the word 'some,' as used in this case, does not mean all, or practically all, substantially all, but means a much lesser portion. I shall not undertake to define specifically the portion. If there were cartons—some cartons—not up to the samples as furnished by the plaintiff, it would be the duty of the defendant to return them to the plaintiff at St. Louis, and the duty then would be upon the plaintiff to replace them; but, if the number of defective cartons manifestly went so far beyond that it was not properly within the commonly accepted meaning of the term 'some,' it was not the duty then of the defendant to return them for replacement, because that did not come within its obligation on that point."

The plaintiff preferred a request for the following instruction:

"Under that contract, plaintiff was to construct five million paper boxes, called 'cartons,' of a certain quality and size, at prices stipulated in the contract. If there were any defects found, the contract required the defendant to return them to St. Louis, and plaintiff was required to replace them by cartons not defective."

Exception was taken to the giving of that part of the charge of the court above set out, and to the refusal of the court to charge as requested.

The word "some" in the connection in which it is used in this contract means a small or inconsiderable number. The definition of the word in the Century Dictionary is: "A certain indefinite or indeterminate quantity or part of; more or less; often so used as to denote

a small quantity or deficiency." It is in this latter sense that it is used in this contract. The definition in Worcester's Dictionary is: "Denoting a certain but indeterminate number of, more or less as to number;" and this definition is supported and illustrated by a text from the Book: "And when he sowed, some seeds fell by the wayside, and the fowls came and devoured them." Matt. xiii. 4. As used in this contract, "some" must receive the same relative definition that the words "about" or "more or less" receive in commercial contracts where the engagement is to furnish "about" a given number or quantity of articles, or to furnish a given number or quantity of articles "more or less." It is well settled that the addition of the qualifying words "about," "more or less," and the like, in such contracts, "is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure, or weight." Brawley v. U. S., 96 U. S. 168, 171, 172, 24 L. Ed. 622; Norrington v. Wright, 115 U. S. 188, 204, 6 Sup. Ct. 12, 29 L. Ed. 366; U. S. v. Pine River Logging & Improvement Co., 61 U. S. App. 69, 80, 32 C. C. A. 406, 89 Fed. 907. In Norrington v. Wright, supra, the contract was for the shipment of iron "at the rate of about 1,000 tons per month, beginning February, 1880, but whole contract to be shipped before August 1, 1880," and the court said:

"These words are not satisfied by shipping one-sixth part of the 5,000 tons, or about 833 tons, in each of the six months which begin with February and end with July. But they require about 1,000 tons to be shipped in each of the five months from February to June, inclusive, and allow no more than slight and unimportant deficiencies in the shipment during those months to be made up in the month of July."

The court did not err in its instruction to the jury, or in refusing the plaintiff's request. The latter was too general and indefinite to be any guide to the jury, and, as we have seen, did not express the correct rule. The contract did not contemplate the return of an entire shipment of cartons numbering many thousands, and still less so when the plaintiff was asserting that all of the cartons were such as the contract called for, and the defendant was asserting that all of them were defective. Standing in this attitude towards each other, the contract was necessarily terminated. The defendant took the hazard of supporting its contention that the boxes were not up to the sample. It chanced it, and won on that issue before the jury.

The court, over the objection of the plaintiff, permitted witnesses who worked in the defendant's starch factory, and were familiar with the construction and use of starch cartons, to compare the cartons shipped by the plaintiff with the sample attached to the contract, and point out to the jury the differences and various alleged defects and imperfections in the plaintiff's cartons. There was no error in this ruling of the court, especially so in view of the fact that the witnesses were familiar with the construction and use of cartons. The cartons produced and compared with the sample were a part of those shipped by the plaintiff to the defendant, and which had been stored in defendant's cellar from the date of their receipt by the defendant, and it was objected that they had in that time undergone a change for the worse, and that the comparison was unfair for that reason. Whether

the cartons had or had not undergone a change was a question of fact for the consideration of the jury to be determined upon a consideration of the evidence. The judgment of the circuit court is affirmed.