Nott, Ch. J.,
dissenting:
There were two sets of correspondence eventuating in two contracts between the parties in this case. In the first correspondence the parties negotiated for the sale and purchase of two cargoes of coal on two designated vessels containing in the aggregate about 3,900 tons. In the second correspondence and contract they agreed upon the sale and purchase of “about 5,000 tons.” It was also stipulated in the contract that the obligation of the purchaser should be to pay “for five thousand (5,000) tons” without any qualifying words, such as “more or less” or “about.” The only reference to a cargo in this contract is that “ deliveries on this contract shall commence with a cargo of 2,200 tons.”
As regards the refusal of the defendants’ officer to receive 366 of these 5,000 tons because the quartermaster department had more coal in Honolulu than was wanted, and the qualifying word of the quantity'to be delivered, “ about,” the case comes under the decision of this and the Supreme Court in Brawley’s Case (11 C. Cls. R., 522; 96 U. S. R., 168). The English decisions have been stricter than the American in the latitude allowed to such qualifying words, but undoubtedly the more just as well as liberal ruling of the Supreme Court is the right one — that they extend onty to “ accidental variations ” from the precise quantity agreed upon in the contract. *608 These qualifying words are generally employed for the pro tection of the vendor, the difficulty of delivering the precise quantity being on him; and the question generally before a court is whether a vendor did all that could be reasonablj" required of him within the intent of the parties when they made the contract, or whether he is trying to evade its obligations. Certain it is that no court ever held that a purchaser could avoid accepting the precise quantity named in his contract by invoking the words “more or less” and “ about.”
The contract in this case provides that if the party of the second part — the vendors — should fail to comply with their stipulations, “then the party of the first part shall have the power to supply deficiency by purchase in open market and to charge up against the party of the second part the extra cost over contract price of any coal so procured.” If the circumstances had been reversed — if the vendors had failed to procure and tender the “deficiency” — and the quartermaster had gone into the market and purchased coal at rates above the contract price, unquestionably it would be held, as has been held in a hundred cases, that the claimant was bound to deliver 5,00,0 tons of coal. In the homely language of common sense, “it is a poor rule that won’t work both ways.”
My conclusion is that the claimants should recover for their loss on the 366 tons of coal tendered and refused.