# MORAN *v.* WAGNER.

SALES; CONTRACTS; RESCISSION.

1. A contract for the sale and purchase of eighteen carloads of oats of a specified grade, 1,400 to 1,500 bushels to the car, to be shipped two cars per month, as requested during month, is a single or entire contract, the provision as to shipping in different months not having the effect of splitting up the contract into as many contracts as there may be shipments.

2. When, under a contract for the sale of a given number of carloads of oats of a specified grade, the seller is to ship a certain number of carloads monthly, the buyer is entitled to rescind the entire contract if any shipment is not of the specified quality, provided he acts with due diligence; and he does not lose his right to do so by accepting several shipments.

No. 1711. Submitted October 23, 1906. Decided November 8, 1906.

HEARING on an appeal by the defendant from a judgment on verdict of the Supreme Court of the District of Columbia in an action for breach of a contract for the purchase and sale of grain. *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal from the supreme court of the District of Columbia.

This was an action brought by appellee, Emil W. Wagner, a Chicago grain broker, against appellant, Patrick T. Moran, for breach of the following contract made with appellee's agents in the city of Washington, and confirmed by appellee in Chicago:

Confirmation Sale.

Chicago, Oct. 5, '04.

P. T. Moran,
   Washington, D. C.

Dear Sir:—

Referring to wire from W. F. Brooks I hereby confirm sale
to you today.

Cars sold 18.

Quantity 1,400 to 1,500 bu. to car.

Grade 2 oats.

Price 35 for Nov. shipment.

Destination ½c. bu. more for each succeeding month.

Via————————.

To be shipped 2 cars per month from Nov.

To be shipped as requested during month.

                              W. F. Brooks & Co.,
                                   Agt's for Wagner.
                              P. T. Moran,
                              E. W. Wagner.


The amended declaration contained three counts.

The first count was for $570, representing the difference in
price of the oats for eight carloads not delivered, and resold at
a less price than the price named in the contract. The second
count was for $93.30, for the loss on one carload of oats contain-
ing 1,500 bushels shipped from Chicago April 5, 1905, and de-
clined by defendant. The third count was the common count
in assumpsit, for $663.30.

At the trial the court directed the jury to return a verdict for
plaintiff upon the first count, to which ruling defendant ex-
cepted.

Upon the second count the court instructed the jury, in part,
as follows:

"Now, the question in controversy is the quality of the oats
in that car. If this contract was made with reference to the
grading of the oats by the Illinois system of inspection, both

parties would be bound by it. If a mistake was made, they would have to make claim against that department. That depends upon whether this contract was made with respect to such custom. If it was, that inspection certificate would be binding so far as this car was concerned. It is not contemplated that these oats would have be perfectly clean. They might not be such oats as a retail dealer would give to his customers, and there is evidence that one dealer cleans all of his oats. If they were not up to No. 2 grade, and were not bought with an understanding that the inspector's certificate should be binding on both parties, you must determine what kind of oats they were. If you find they were not up to this grade, that they were No. 3, or contained more dirt than they ought to have, then the defendant is entitled to that, and you should leave out of your verdict the amount claimed in the second count."

The defendant requested, among others, the following instructions:

"If the jury find from the evidence that the oats in car No. 8097, shipped by the plaintiff to the defendant under their contract in evidence, were not No. 2 oats, but were of an inferior grade or quality, the defendant had a right to reject said oats and rescind said contract, and their verdict must be for the defendant.

"If the jury find from the evidence that the oats in car No. 8097 shipped by the plaintiff to the defendant under their contract in evidence were not No. 2 oats, but were an inferior grade or quality, the defendant had a right to reject said oats and rescind said contract, if he acted promptly and in good faith."

These instructions were denied, and exceptions duly noted.

The jury, under the court's instructions, returned a verdict for plaintiff upon the first count, and found for the defendant upon the second count.

The November, December, January, and February shipments were received and paid for by appellant, as was the first carload of the March shipments. The February shipments and

the first March shipment had sight drafts attached, and were paid for before examination. Complaint was subsequently made as to the quality of these shipments, and a small rebate allowed appellant. The second March shipment, car No. 8097, reached Rosslyn, Virginia, April 19, 1905, and appellant at once caused an examination to be made of the oats contained in this car, to determine their quality. Independent examinations were made by his employees, who carried samples to him, by an inspector, and an assistant inspector of the Washington Grain Exchange, an incorporated body of grain dealers, and by other grain dealers of Washington, all of whom testified at the trial that the oats were not No. 2 oats in that they contained an excessive amount of dirt. The appellant, after satisfying himself that the oats in this car were not what the contract demanded, despatched the following letter to appellee on the day following the arrival of the car at Rosslyn:

Office of P. T. Moran, Wholesale Dealer in Flour, Grain, and Feed, 3259–3261 M. Street, Northwest.

Phone 105 West.                           Washington, D. C.
                                          April 20, 1905.

E. W. Wagner, Esq.

Gentlemen:—

I regret very much that I will be compelled to cancel balance of oat contract, owing to the dirty condition of all the goods you have been shipping, there is a car on track this A. M., which is not any better than the previous cars, which I complained of. I can furnish you sworn statements, if you require them, from a number of my customers, who refuse to get any more oats from me because of the dirty condition of the goods I furnished them which you shipped me. I know you will understand I tried to be fair with you, and gave you every opportunity to furnish me clean oats, but I cannot continue to let all my customers get away from me.

                              Yours truly,
                                    P. T. Moran.

To this letter appellee replied and suggested that the appellant reconsider his decision not to accept further shipments, but appellee received no response to his letter.

*Mr. H. W. Sohon* and *Mr. R. F. Downing* for the appellant.

*Mr. John B. Daish, Mr. John Ridout,* and *Mr. Joseph D. Sullivan* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The only question in this case is whether appellant was legally justified in rescinding the contract. That the contract in this case is a single contract is clearly determined by the decision of th Supreme Court of the United States in *Norrington* v. *Wright,* 115 U. S. 188, 29 L. ed. 366, 6 Sup. Ct. Rep. 12. In that case action was brought upon a contract for the sale and purchase of 5,000 tons of iron rails "at the rate of about one thousand (1,000) tons per month, beginning February, 1880, but whole contract to be shipped before August 1, 1880, at forty-five dollars ($45) per ton of 2,240 lbs. custom-house weight, ex ship Philadelphia. Settlement cash on presentation of bills accompanied by custom-house certificate of weight." Through Mr. Justice Gray, the court said:

"The contract sued on is a single contract for the sale and purchase of 5,000 tons of iron rails, shipped from a European port or ports for Philadelphia. The subsidiary provisions as to shipping in different months, and as to paying for each shipment upon its delivery, do not split up the contract into as many contracts as there shall be shipments or deliveries of so many distinct quantities of iron. *Mersey Steel & I. Co.* v. *Naylor,* L. R. 9 App. Cas. 434, 439. The further provision that the sellers shall not be compelled to replace any parcel lost after shipment simply reduces, in the event of such a loss, the quantity to be delivered and paid for."

In the instant case, instead of 5,000 tons of iron rails the con-

tract called for eighteen cars of oats, and, as cars undoubtedly vary somewhat in capacity, the quantity to be contained in each car was specified at between 1,400 and 1,500 bushels.

The contract being an entire contract, we think the case is ruled by the *Norrington* v. *Wright Case,* and that the learned court below erred in directing a verdict for the plaintiff upon the first count. The jury found that the oats in the last shipment tendered the defendant were not No. 2 oats; in other words, that they were not such oats as the contract called for, and that the defendant was justified in declining to accept them. We fail to perceive any difference between a failure to deliver the quantity of oats at the time agreed upon, and the failure to deliver the kind or quality of oats called for under the contract. The jury were, in effect, instructed that they must find a material difference between the oats in this car and No. 2 oats as defined by witnesses, to justify the defendant in declining to accept them. The jury so found, and the fact of such material difference was thereupon settled. We do not think the defendant was called upon to wait until another shipment was received, before he determined to rescind the contract. On the contrary, we think the breach of the contract by the plaintiff entitled the defendant, immediately the breach became known, to rescind the contract *in toto,* provided only that he acted with due diligence. Again quoting from *Norrington* v. *Wright:*

"But the contract before us comes within the general rule: 'When no such independent circumstances are referred to, and the engagement is to furnish goods of a certain quality or character to a certain amount, the quantity specified is material and governs the contract. The addition of the qualifying words "about," "more or less," and the like, in such cases, is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure, or weight.' *Brawley* v. *United States,* 96 U. S. 168, 171, 172, 24 L. ed. 622, 623, 624. The seller is bound to deliver the quantity stipulated, and has no right either to compel the buyer to accept a less quantity, or to require him to

select part out of a greater quantity; and when the goods are to be shipped in certain proportions monthly, the seller's failure to ship the required quantity in the first month gives the buyer the same right to rescind the whole contract that he would have had if it had been agreed that all of the goods should be delivered at once.    *    *    *    Being of opinion that the plaintiff's failure to make such shipments in February and March as the contract required prevents his maintaining this action, it is needless to dwell upon the further objection that the shipments in April did not comply with the contract, because the defendants could not be compelled to take about 1,000 tons out of the larger quantity shipped in that month, and the plaintiff, after once designating the names of vessels, as the contract bound him to do, could not substitute other vessels.    See *Busk* v. *Spence,* 4 Campb. 329; *Graves* v. *Legg,* 9 Exch. 709; *Reuter* v. *Sala,* L. R. 4 C. P. Div. 239."

In the above case, rails of the right *quality,* but less in quantity than the contract demanded, were contained in the shipments which formed the basis for the rescission of the contract. The only difference, therefore, between that case and the present case, is that in one the contested shipments contained the right *quality,* but the wrong *quantity,* while in the other the contested shipment contained the right *quantity,* but the wrong *quality.*  We think the statement of the difference between these cases points to the conclusion that quality is as much of the essence of the contract as quantity.    The result certainly would be remarkable, should we hold that under the authority of *Norrington* v. *Wright* the delivery of a car containing 1,300 bushels, instead of 1,400 bushels, of No. 2 oats, would justify the rescission of the contract, but that the delivery of a car containing 1,400 bushels of oats of an inferior grade, and therefore not susceptible of use by the defendant, would not.    Had a car been delivered containing 1,300 bushels of No. 2 oats, he could have used the whole quantity immediately, and the delay incident to the delivery of the 100 bushels would not have been a very serious matter; but when a car containing oats he could

not use and which he had not bought was shipped him, he certainly was injured.. That some other dealer bought and *cleaned* these oats, and thereby made them merchantable, has nothing to do with this case. Appellant contracted for one thing, and received another which he was not bound to accept.

We attach no significance to the fact that in this case the contract was not rescinded until after several deliveries had been made. The contract demanded that *each* shipment should be No. 2 oats, and it is obvious that until some shipment fell below that grade there would be breach, and no right of rescission.

When a shipment, whether the first or the last one, fell below contract grade, the right of rescission accrued. The judgment is reversed, with costs.                    *Reversed.*