# WHITE *v.* UNITED STATES.

CONTRACTS; OFFICERS; UNITED STATES; MISTAKE OF LAW.

1. Where a contract is made to sell goods identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse, or all that may be manufactured by the vendor in a certain establishment, or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named with the qualification of "about" or "more or less," or words of like import, the contract applies to the specific lot; and the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it.

2. Where a contractor with the government agrees to reconstruct the road-bed of a railroad, and to relay the track between points named, and "to furnish all new ties necessary to replace those unfit for further service (approximately 2,000)", the number of ties designated is merely an estimate of the number of new ties that may be required, and he is not entitled to extra pay for new ties furnished by him in excess of that number.

3. *Quære,* whether an officer of the government may legally be given authority in a contract for public work, to determine the law of that contract.

4. Where a contract by the government provided that the contractor in reconstructing a railroad should "furnish all new ties necessary to replace those unfit for further service (approximately 2,000)", and required him to furnish all materials, labor, etc., necessary to complete the work according to the specifications, and that the officer in charge should be the interpreter of the true intent and meaning of the specifications, the authority of the officer is exhausted when he determines the number of ties unfit for further service and that must be replaced with new ties; and if the contractor furnishes more than 2,000 new ties, the officer in charge has no power to authorize additional payment for the ties furnished in excess of that number.

5. In an action by the United States to recover from a contractor money paid him in excess of the contract price, by mistake of law of the officer in charge of the work covered by the contract, statements in a plea by the defendant that the amount so paid the defendant by the officer was the price agreed upon in a supplemental contract, and that the amount was paid upon written authority of the Secretary of War, are not sufficient to constitute a defense. Such statements in the plea are mere statements of conclusions, and not of facts.

6. Money paid out by an officer of the government under a mistake of law may be recovered by appropriate action.

No. 2317.   Submitted December 7, 1911.   Decided January 2, 1912.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, for want of a sufficient affidavit of defense, in an action by the United States to recover money alleged to have been paid to the defendant under a mistake of law.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment for the appellee, plaintiff below, in the supreme court of the District, under the seventy-third rule.

The suit was brought by the United States to recover from the defendant, Sam P. White, $503.80, alleged to have been paid him by officers of the government under a mistake of law. In the declaration it is alleged that on the 3d day of September, 1907, a contract was entered into by the government, through

its duly authorized agents and the defendant, whereby the defendant agreed to furnish all new ties necessary to replace those unfit for further service, and fully to complete the work of making repairs and alterations to the railroad at Ft. Monroe, Virginia, in accordance with the plans and specifications attached to said contract; that for the work covered by the contract the sum of $28,489 was to be paid; that this contract was duly approved as its provisions required; that the defendant was paid the full amount specified; that the officer supervising the execution of said contract "erroneously construed the same and the powers supposed to be thereby conferred upon him, and, under such erroneous construction and meaning, paid or caused to be paid to the said defendant, out of the funds and moneys of the plaintiff," $503.80 for 485 ties at $1.10 each; that these "were new ties used by the defendant in the said work of reconstruction and extension of said railroad tracks, as provided in and by the said contract, to replace those unfit for further service, which the said defendant was, according to the true intent and meaning of said contract, obligated to furnish at his own expense, and the said ties were necessary to complete the repairs and alterations to the railroad according to the terms and provisions of the contract aforesaid."

A copy of the specifications and contract is attached to the affidavit filed with the declaration. Paragraph 3 of the specifications provides that "the contractor shall furnish all materials, labor, etc., necessary to complete the work, according to the true intent and meaning of the drawings and these specifications, of which intent and meaning the officer in charge shall be the interpreter. No local terms or classifications will be considered in the interpretation of these specifications." Paragraph 5 states the intention of the parties to be that the drawings and specifications shall include everything requisite and necessary to the proper and entire finishing of the work. In paragraph 14 it is provided that the officer in charge shall decide what is the best and most suitable article to use where the words "best quality," or "approved quality," or "other equally as good," are employed. Under paragraph 19 all materials de-

livered or labor furnished by the contractor are to be subject to the inspection of the officer in charge, or other authorized agent of the Quartermaster General's office. Under paragraph 20 no charge for extra work is to be allowed unless ordered in writing by the officer in charge.

Paragraph 25 of the specifications divides the work into subheads. Under subhead "d" of that paragraph, the contractor was to "relay all track with 50 lb. standard rail, C. & O. switch to Battery Ruggles; do all grading necessary." Paragraph 30 reads in part as follows: "Under par. 25 (d) the contractor to furnish all labor and material necessary, and to reconstruct roadbed and track, from C. & O. switch on Mill creek road to Battery Ruggles (approximately 11,000 feet, including all sidings), to do all cutting, filling, and grading to conform to location of track as shown on map herewith, *to furnish all new ties necessary to replace those unfit for further service* (approximately 2,000); to furnish all new standard 50 lb. rail to complete main line and sidings between points shown; to furnish all necessary standard fish plates of approved pattern, spikes to be standard 5 and $\frac{1}{2}$ inches x $\frac{9}{16}$, ties to be placed 2 and $\frac{1}{2}$ feet on centers or to run about 2,000 to the mile."

Article 1 of the contract requires the contractor to furnish "all the labor and material necessary, and to fully complete the work of making repairs and alterations to the railroad, at Ft. Monroe, Virginia, in accordance with plans and specifications" attached to and made a part of the contract.

In a special plea to the declaration which the defendant filed, he admits the receipt of said $28,489, and avers that, in addition to said amount, the officer in charge paid him for the ties mentioned in the declaration, which the defendant avers he was not under obligation to furnish without extra compensation, the extra compensation paid "being the price agreed upon in a supplemental contract." The defendant further avers that the officer in charge was to be the interpreter of the intent and meaning of the specifications, and that in pursuance of the authority vested in him he decided that according to such intent and meaning the defendant could not be required to furnish

such additional ties, and that thereupon, acting for and on behalf of the plaintiff, he purchased from the defendant said ties; that thereafter said officer in charge, "upon the written order of the Secretary of War," paid defendant therefor. It is not denied, either in defendant's plea or in his affidavit of merit, that these additional ties were necessary to replace those unfit for further service" in that part of the railroad which the contract required the defendant to reconstruct. He contends rather that the use of the term "approximately 2,000" in the specifications did not, as matter of law, require him to furnish these additional ties; that the officer in charge so decided, and, upon the written authority of the Secretary of War, paid for all the ties that had been furnished in excess of 2,000, without reference to whether they were necessary to replace those unfit for further service.

*Mr. Bynum E. Hinton* for the appellant.

*Mr. Clarence R. Wilson,* United States District Attorney, *Mr. Reginald S. Huidekoper,* Assistant, and *Mr. Chapman W. Maupin* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

In *Brawley* v. *United States,* 96 U. S. 168, 24 L. ed. 622, bids were invited by the government to furnish "880 cords of wood or more," at Fort Pembina, Dakota Territory. The bids were opened April 15, 1871, and on May 6, following, the contract was awarded to Brawley. It was not executed, however, until June 14th of the same year. The contract called for 880 cords, "more or less, as shall be determined to be necessary by the post commander, for the regular supply, in accordance with army regulations of the troops and employees of the garrison of said post, for the fiscal year ending July 1, 1871, and ending June 30, 1872." About the 18th of June, 1871, the post commander at Fort Pembina first learned of the contract, and informed Brawley that only 40 cords of wood would

be required, and forbade the hauling of any more.  Written
notice to this effect was given on July 1st.  Relying upon the
award of the contract to him, and expecting that the quantity
named in the accepted proposal would be wanted, Brawley,
before the contract had been signed, cut the 880 cords of wood
and hauled part of it to the Fort by permission, and with the
understanding that he assumed all risk regarding its acceptance.
After the receipt of said notice, he hauled the remaining wood
to a point near the Fort.     Forty cords only were received by
the post commander, and the suit involved the balance.    The
court denied recovery, saying:   "Where a contract is made to
sell or furnish certain goods identified by reference to indepen-
dent circumstances, such as an entire lot deposited in a certain
warehouse, or all that may be manufactured by the vendor in
a certain establishment, or that may be shipped by his agent or
correspondent in certain vessels, and the quantity is named with
the qualification of 'about,' or 'more or less,' or words of like im-
port, the contract applies to the specific lot; and the naming of
the quantity is not regarded as in the nature of a warranty, but
only as an estimate of the probable amount, in reference to which
good faith is all that is required of the party making it."    The
court further said that where the engagement is to furnish
goods of a certain quality or character to a certain amount, and
no independent circumstances are mentioned, the quantity is
material and controlling.   In such a case the qualifying words
"about," or "more or less," and the like, are used only for the
purpose of guarding against accidental variations.   If, however,
"the qualifying words are supplemented by other stipulations
or conditions which give them a broader scope or a more ex-
tended significancy, then the contract is to be governed by such
added stipulations or conditions.   As, if it be agreed to fur-
nish so many bushels of wheat, more or less, according to what
the party receiving it shall require for the use of his mill, then
the contract is not governed by the quantity named, nor by that
quantity with slight and unimportant variations, but by what
the receiving party shall require for the use of his mill; and
the variation from the quantity named will depend upon his

discretion and requirements, so long as he acts in good faith." The court found that the contract then under consideration was not for the delivery of any particular quantity; that the quantity designated was to be regarded merely as an estimate of what the officer making the contract supposed might be required, the substantial engagement being "to furnish what should be determined to be necessary by the post commander for the regular supply for the year, in accordance with army regulations." The contract, the court said, merged all previous negotiations, and if it did not express the true agreement of the parties, Brawley should not have signed it. What he did, therefore, before the contract was signed, was at his own risk and could not be considered.

Applying the rule announced in the Brawley Case to the one under consideration, we think it is very clear, as was said by the learned trial Justice, that "the expression 'approximately 2,000' must be regarded as simply an estimate, and not as limiting or modifying in anywise the agreement of the defendant 'to furnish all new ties necessary to replace those unfit for further service.'" There is no suggestion of bad faith on the part of the officers of the government, and we are therefore remitted to the language employed in the specifications and contract. The defendant was required to reconstruct the roadbed and relay the tracks between the points named. He was to replace with new ties all those unfit for further service. These, as was said in the Brawley case, are the determinative words, and constitute the substantial engagement. The approximate estimate given represents the tentative judgment of the officers then representing the government. To guard against any possible misunderstanding, the contractor was required specifically to agree to replace with new ties those found by the officer overseeing the work to be unfit for further service; that is to say, as the old ties were entirely uncovered, it would be easier to determine their condition, and the determination then made was to govern. Had 500 ties only been necessary, nothing could have been deducted from the amount called for by the contract, for the reason that this item of the contract called for no more new

ties than were necessary to replace those unfit for further service. The obligations of the parties being reciprocal, we think it is quite apparent that the contractor could not have fulfilled his part of the contract by furnishing less ties than were necessary to replace those unfit for further service.

But it is insisted that the officer of the government was made the interpreter of the true intent and meaning of the specifications, and that his decision in the premises is binding upon the parties. . The view we take of the case renders it unnecessary to determine whether an officer of the government may be given authority, in such a contract as is here before us, to determine the law of that contract. In our view, this was not attempted. He was merely to determine questions of fact, and not of law. The provisions of the specifications to which we have referred all indicate this. Paragraph 3, upon which the defendant particularly relies, requires the contractor to furnish all materials, labor, etc., necessary to complete the work, according to the true intent and meaning of the drawings and specifications. It then provides that the officer in charge shall be the interpreter of such intent and meaning, that is to say, he shall determine what shall be necessary *"to complete the work."* When, therefore, he determined the number of ties unfit for further service and that must be replaced with new to complete the work, he exhausted his authority, and the additional amount paid for the ties here involved was paid under a mistake of law. These ties did not constitute extra work within the meaning of paragraph 20 of the specifications, but, as previously pointed out, were clearly required to be furnished under paragraph 30 thereof.

It is unnecessary to determine what would have been the result had an additional contract been entered into for the furnishing of these 458 ties, since the averments in the plea are not sufficiently explicit to raise the question. In one place, as we have seen, it is averred that the officer in charge paid the defendant for these ties, the amount paid "being the price agreed upon in a supplemental contract at the price of $1.10 each tie." This is a mere conclusion of the pleader, and amounts to nothing more than an allegation that the officer in charge entered into

some sort of supplemental contract. This he was without authority to do. It is later averred in the plea that this additional amount was paid by the officer in charge "upon the written authority of the Sercetary of War." Here, again, there is no averment that a supplemental contract had been entered into by one authorized to act for the government, but rather that the Secretary of War, adopting the mistake of law theretofore made by the officer in charge, authorized the payment. It is enough to say that there is no more efficacy in a payment under a mistake of the Secretary, than in a payment under a mistake of the officer in charge. The defendant should have pleaded what was actually done, and not mere conclusions.

It is now well settled that money paid out by an officer of the government under a mistake of law may be recovered by appropriate action. *McElrath* v. *United States,* 102 U. S. 426, 26 L. ed. 189; *United States* v. *Gillmore,* 189 Fed. 761.

The judgment of the trial court was correct and is therefore affirmed.                              *Affirmed.*