PROVOSTY, C. J.
The real plaintiff in this suit is the American Refrigerator & Transportation Company. The cause of action arose, and this suit was filed, while said company was in the hands of the Director General of Railroads; hence the title'of the suit. Said company having need of large quantities of ice for refrigerating cars for the transportation of fruit and other perishable products, sought to secure its supply by entering into a contract with the Shreveport Ice & Brewing Company, a- manufacturer of ice, defendant in this suit. Defendant is now in fhe hands of a receiver. Plaintiff demanded of. the receiver 3,000 tons of ice under said contract, and, on the refusal of the defendant company to furnish more than 1,000, bought the other 2,000 on the open market, and now sues in damages for the difference between the market price and the contract price. There is no dispute on the facts; but only as to the proper interpretation of the contract. The question being as to whether the option granted to plaintiff by the second clause covered all the ice held in the storage vaults of defendant or only 1,000 tons thereof. The pertinent clauses read:
“1. The ice company agrees to fill with ice its storage vaults adjoining its plants, which hold approximately one thousand (1,000) tons of ice, by June 1, during each of the years 1913 to 1919, both inclusive, and in consideration of the ice company filling said storage vaults with ice as hereinbefore provided, the refrigerator company agrees to purchase and take from the ice company, and the ice company agrees to sell to the refrigerator company, f. o. b. its tracks at Shreveport, Louisiana, one hundred (100) tons of ice during each of the years 1913 to 1919, both inclusive, said ice to be made from distilled water-and to be firm, clean and merchantable at time of delivery.
“2. It is further understood and agreed that the refrigerator company is to have first option on all ice in storage houses of the ice company in excess of the amount contracted for as shown in. paragraph 1, and also the daily production of the plants of the ice company in excess of the retail demands of the ice company for its local and carload business during the years 1913 to 1919, both inclusive, all such ice to be made from distilled water and to be firm, clear and merchantable at time of delivery.
“3. The refrigerator company agrees to give the ice company notice in writing at as early date as possible prior to June 1 of each of the years 1913 to 1919, both inclusive, of the amount of ice that will be necessary for the requirements of the refrigerator company in excess of the number of tons contracted for, as shown in paragraph 1.”
By the terms of this second clause the option contracted for in it covers “all the ice in storage houses of the ice company.” Defendant contends that this general expression must be read in connection with that part of clause 1 reading: “The ice company agrees to fill its storage vaults adjoining its plants, which hold approximately one thousand (1,000) tons of ice by June 1;” and is controlled by it; so that the obligation of the ice company is limited to 1,000 tons.
As we read the contract, the refrigerator company obligates itself to take yearly 100 *703 tons at the price fixed in the contract; and the.ice company grants to it an option at the same price on all the ice manufactured by it (whether in storage or not) “in excess of the retail demands of the ice company for its local and carload business.”
The letter of the contract is that way. The other reading is not an impossible one, and might perhaps be adopted if recommended by the attending circumstances. But these point in the opposite direction. The contract was not a bad one for the ice company at the time it was made; and the officers who acted for the two companies in making it appear to have interpreted it in the sense it reads. Thus, in Hay, 1915, plaintiff wrote to defendant:
“In accordance with paragraph three of contract executed on the first day of August, 1913, this is definite notice that we will purchase and take from you 2,500 tons of ice to be delivered during the months of June and July, 1915.
“Kindly acknowledge receipt and oblige.”
Defendant’s then agent, he who had represented defendant in making the-contract, acknowledged receipt of this notice without challenging in any way, or demurring to, the statement that under the contract plaintiff was. entitled to demand 2,500 tons.
And thereafter the annual delivery exceeded 1,000 tons.
Defendant seeks to palliate the force of this construction, thus put upon the contract by the persons who made it, by saying that at the time this letter was written, and thereafter until 1919, when the difference between the parties began, the price of ice had not risen, and, hence, that the defendant could have had no objection to letting plaintiff have more than the 1,000 tons named in the contract. However this may be, the fact remains that, for several years immediately following its being entered into, the contract was carried out in a manner corresponding with the construction contended for by plaintiff.
That an incidental mention'of capacity or quantity, such as that in clause 1 of this contract, so much relied on by defendant is more likely to have been intended to be merely descriptive, and not controling or by way of a warranty, is illustrated by the cases of Bautovich v. Great Southern Humber Co., 129 Ha. 858, 56 South. 1026, Ann. Gas. 1913B, 848; and Brawley v. U. S., 96 U. S. 168, 24 L. Ed. 622.
Judgment went for plaintiff below.
Judgment affirmed, at appellant’s cost.