**ALLOYS AND CHEMICALS CORPORATION**

v.

**The UNITED STATES.**

No. 8–62.

United States Court of Claims.

Nov. 15, 1963.

As Amended Nov. 22, 1963.
Rehearing Denied Jan. 24, 1964.

Abraham M. Lowenthal, New York City, for plaintiff. Leon G. Telsey and Telsey & Lowenthal, New York City, were on the brief.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

JONES, Chief Judge.

This is a suit on a surplus property disposal contract, in which plaintiff-vendee seeks recovery for loss of anticipated profit resulting from delivery of a quantity of aluminum silicon approximately 45 percent less than that estimated by the terms of the contract. This material, a radioactive waste generated at the Atomic Energy Commission's Savannah River installation operated for defendant by E. I. Du Pont de Nemours Co., Inc., was offered for sale by Du Pont. Plaintiff contends and for the purpose of this motion only defendant admits that Du Pont was acting in this sale as defendant's agent.

Pursuant to Du Pont's invitation for bids on the lot B–114 in question of March 27, 1961, the quantity of which was estimated to be 3,500,000 pounds, plaintiff on May 15 submitted a bid of 10.198 cents per pound. This bid was accepted by letter dated May 24. Between June 9 and August 18 of that year plaintiff received 1,934,467 pounds of the material, which was as it actually developed the total quantity of the lot and approximately 55 percent of the estimate, and here seeks $125,000 as loss of profit. Defendant counterclaims for $72,634.24 with interest as the sum due and owing on scrap delivered under the contract but yet unpaid for; and its motion for summary judgment is addressed both to dismissal of plaintiff's petition and to recovery on the counterclaim.

The relevant portions of the contract are as follows:

"4. Inspection: (A) Inspection of material available for immediate sale may be made at the Savannah River Plant, by contacting the individual signing this invitation, forty-eight hours prior to the time it is desired to make inspection. Failure to inspect the material shall not constitute grounds for adjustment of [sic] revision of any contract resulting from this offer.

"(B) The quantity of the above material is estimated only and Du Pont Company does not guarantee to furnish any maximum or minimum quantities of any of the above classes of materials.

"(C) All materials listed herein are offered 'As is' and without recourse. The description is based on the best available information and Du Pont Company makes no guaranty, warranty or representation, express or implied as to exact quantity, kind, character, quality, weight, size, or description of any of the property, or its fitness for any use or purpose, and no claim will be considered for allowance or adjustment or for the rescission of the sale based

upon failure of the material to correspond with the standard expected.

\* \* \* \* \* \*

"[Special Condition] E. Sale of Property—*As is:* Deletion of Section C, Item 4, Page 2, is hereby made and the following condition is substituted therefor: 'All property offered hereunder is sold "As is": Du Pont makes no guaranty, warranty, or representation, expressed or implied, as to the kind, size, weight, quality, character, description, or condition of the property \* \* \*.' "

In disposing of defendant's motion for summary judgment, three issues are presented:

(1) Was any warranty of quantity wholly negated?

(2) If warranty of quantity was wholly negated, is absolute physical impossibility of an inspection by plaintiff before bidding sufficient grounds for distinguishing the instant case from prior decisions treating of the customary "As is" sale and for allowing recovery here?

(3) Even though the legal consequences of an "As is" sale be unaltered by the impossibility of inspection, has plaintiff alleged sufficient facts bringing into question defendant's good faith in arriving at its estimate of quantity so as to require trial on this question of good faith?

■ The warranty of quantity was wholly negated. This is the clear intendment of the Sale Terms and Conditions, specifically of Item 4(B) and Special Condition E as viewed together. Plaintiff's suggestion that the omission in the Special Condition of explicit reference to quantity in the list of warranties therein negated indicates an intent (contrary to that which would have been manifested by retention of Item 4(C), which had made direct reference to quantity) is not persuasive.

It is not necessary to determine the proper interpretation of a contract containing a provision such as Special Con-

dition E but absent the complementary and concomitant Item 4(B). There is not now before us the question whether in such a contract the negation of warranty as to "weight" (such as appears here in the Special Condition) would refer to the over-all quantity in pounds or merely to the weight of individual ingots. We are here, as always, called upon to interpret not a hypothetical contract but the instant one. And no ambiguity appears upon a reading of these two provisions, for Item 4(B) clearly provides that "the quantity * * * is estimated only."

Accordingly, this is by reason both of specific language (Special Condition E: "All property offered hereunder is sold 'As is'.") and of clear construction an "as is" contract. It is well settled that in such a contract the vendee has no right of recovery because it develops that the quantity available is less, even greatly less, than the estimate. Lipshitz & Cohen v. United States, 269 U.S. 90, 46 S.Ct. 45, 70 L.Ed. 175 (1925).[1] This is so where the vendee has bid on the basis of a lump-sum price which he is obligated to pay notwithstanding the substantial variance. Lipshitz & Cohen v. United States, supra; Mottram v. United States, 271 U.S. 15, 46 S.Ct. 386, 70 L.Ed. 803 (1926); Furman v. United States, 140 F.Supp. 781, 135 Ct.Cl. 202 (1956), cert. denied 352 U.S. 847, 77 S.Ct. 65, 1 L.Ed. 2d 58. It is clearly so where, as here, this proposition of law is less rigorously tried by the equities because plaintiff, having bid on a price per pound basis, is obligated to pay for no more than the quantity actually delivered.

■■ Nor may this consequence of an "as is" sale be avoided because inspection was impossible. The wastes here, highly radioactive when generated, admittedly lay buried beneath the earth. Prospect of an inspection such as might have been of any value to the erstwhile bidder in confirming defendant's quantity estimate was nonexistent. Nevertheless, a vendee in an "as is" sale may not secure recovery premised on a variance between estimated and actual quantities because inspection prior to conclusion of the contract was an absolute physical impossibility.

Notwithstanding the provision of Item 4(A) concerning inspection, plaintiff was wholly aware that inspection was impossible before submitting its bid. Indeed, plaintiff asserts in the affidavit of its executive vice president that prior to bidding it was informed that access to the locale of the burial site could not be granted.

Item 4(A) in fact expressly provides that "failure to inspect the material shall not constitute grounds for adjustment of [sic] revision of any contract resulting from this offer." Neither does it constitute grounds for recovery for loss of profit. Quite closely in point is the case of United States v. Hathaway, 242 F.2d 897 (C.A.9 1957), where the scrap lay buried beneath the waters of an artificial lake created by Bonneville Dam, fully as impervious to any useful inspec-

1. Mr. Justice McReynolds in delivering the unanimous opinion of the Supreme Court quoted and approved the opinion of the District Court:

"'* * * I am satisfied that they [plaintiffs] cannot claim that this contract, worded as it was, has been broken because it turned out that there was less, even greatly less, of some of the materials described as on hand than the description would have led the purchaser to suppose. It is not made to appear that the United States failed or refused to deliver any of the material that was actually at the forts named at the time the contract was made.'

"We approve this construction of the agreement. Applicable principles of law were announced by Mr. Justice Bradley, speaking for the court in Brawley v. United States, 96 U.S. 168, 171 [24 L.Ed. 622]. The negotiations had reference to specific lots. The naming of quantities cannot be regarded as in the nature of a warranty, but merely as an estimate of the probable amounts in reference to which good faith only could be required of the party making it." [p. 92 of 269 U.S., p. 46 of 46 S.Ct., 70 L.Ed. 175.]

tion as the scrap buried beneath the earth in the instant case.

Finally, plaintiff has failed to allege facts sufficient to present a material issue requiring trial on the question of defendant's good faith. The fact of substantial variance between estimate and actuality is of itself insufficient. Plaintiff has, however, gone beyond this, and alleges facts which, if proved, would establish that defendant had neither used the most thorough and systematic sampling procedures available nor maintained reliable records of the wastes generated in arriving at its estimate.

However, it is precisely because a vendor lacks a very accurate knowledge of the quantity available and is motivated by the desire to avoid the difficulty and expense in securing or maintaining such data that it undertakes to sell on an "as is" basis, negating any warranty of quantity and expressly not guaranteeing any maximum or minimum amounts. This is especially so where, as here, the material offered for sale is a waste product, generated as just that in the course of defendant's operations and offered for sale essentially as scrap, and where the activity of disposing of it is manifestly subordinate to the principal purpose of those operations.

Moreover, Item 4(C) of the Sale Terms and Conditions generally in effect which provides that the estimate was reached on the basis of the best information available has been wholly deleted, and the substituted Special Condition E is without such provision. Thus the facts which plaintiff alleges, taken as true, may not in these circumstances be found equivalent to bad faith. This is not to say that allegations short of a positive intent to deceive will never raise a material question of fact on defendant's good faith; for in appropriate circumstances a vendor's indifference to the accuracy of his estimate might conceivably be alleged which is so consummate as to be of identical effect. However, facts sufficient if proved to show just such arrant indifference must be alleged. No such facts are here averred.

Accordingly, defendant's motion for summary judgment is granted, plaintiff's petition dismissed, and judgment for $72,634.24 with interest given defendant on its counterclaim, such interest to be computed at four percent (4%) per annum from March 2, 1962, the date of filing of the counterclaim, to date of payment. The judgment on the counterclaim is conditioned upon a release by the E. I. Du Pont de Nemours & Company, Inc., of any interest in the counterclaim.