## WOLFF v. WELLS, FARGO & CO.

### (Circuit Court of Appeals, Ninth Circuit. February 17, 1902.)

### No. 698.

**1. APPEAL—REVIEW—ACTION TRIED TO COURT.**

Where, by stipulation, a jury is waived in the circuit court, the facts as found by the court are not subject to review by the appellate court.

**2. SALES—CONSTRUCTION OF CONTRACT—EVIDENCE TO EXPLAIN AMBIGUITY.**

Where a written offer, which was accepted, for the sale of cement to be used in the construction of a certain building, stated that it named a price "for what you may require, on about 5,000 barrels, more or less," the language was not so clear and unambiguous as to render it error for the court to admit evidence of a previous conversation between the parties, which was expressly referred to in such offer.

**3. SAME—BUILDING MATERIALS—CONSTRUCTION AS TO QUANTITY.**

Defendant submitted to plaintiff a written offer, stating that "we take pleasure in submitting to you our quotation on * * * cement for use in the new * * * building now in course of construction. We will name you a price for what you may require, on about 5,000 barrels, more or less, * * * delivered at the building site * * * in quantities to be designated by you." The offer was accepted. Held, that the contract was not one to deliver any particular quantity, but to deliver so much as might be required in the construction of the building; the designation of "about 5,000 barrels, more or less," being merely the estimate of the parties as to the quantity which would be required.

In Error to the Circuit Court of the United States for the Northern District of California.

The findings of fact and conclusions of law of the circuit judge, referred to in the opinion, are as follows:

"(1) On or about the 24th day of September, 1897, the defendant, at the city and county of San Francisco, state of California, contracted to sell to the plaintiff as much Alsen's German Portland Cement as the plaintiff should require for use in the construction of a building which the plaintiff was at that time about to erect in said city and county of San Francisco, at the rate of $2.56 per barrel. The amount of cement so contracted to be sold was not restricted to any particular number of barrels. It is not true that at said time the defendant and the plaintiff contracted for the sale of five thousand (5,000) barrels of said cement delivered at the building site of said building in the said city and county of San Francisco for the price of two and 56/100 dollars ($2.56) per barrel. It is not true that the defendant on his part performed all of the terms and conditions of the contract which the court finds was made with the plaintiff for the sale of said cement. (2) The plaintiff was required and was compelled to use seven thousand nine hundred and twenty-five (7,925) barrels of cement in the construction of said building. (3) The defendant delivered to the plaintiff for use in the construction of said building, at the site of said building, five thousand barrels of Alsen's German Portland Cement, at $2.56 per barrel. The plaintiff required and was compelled to use in the construction of said building 2,925 barrels of cement in addition to the said 5,000 barrels delivered to it by the defendant. The plaintiff requested the defendant to deliver to it the cement which it so required and was compelled to use in excess of said 5,000 barrels at the said rate of $2.56 per barrel, for use in the construction of said building, pursuant to the terms of said contract, but the defendant wholly failed, neglected, and refused to deliver to the plaintiff any more than the said 5,000 barrels under said contract. (4) By reason of the failure, neglect, and refusal of the defendant to furnish or deliver said 2,925 barrels of

cement to the plaintiff, the plaintiff has been damaged in the sum of $2,876, without interest. (5) With respect to the issues made by the allegations of the first counterclaim set up in the answer of the defendant, the court finds that the allegations of paragraphs 1, 2, and 3 thereof are true. It is not true that on the 24th day of September, 1897, the plaintiff contracted to purchase of the defendant, and the defendant contracted to sell to the plaintiff, at the rate of two and fifty-six one-hundredths dollars ($2.56) per barrel at the site of the said building of the plaintiff in the said city and county of San Francisco, five thousand (5,000) barrels of Alsen's German Portland Cement, but in this behalf the court finds the facts to be as in finding 1 hereof stated. It is true that pursuant to the terms of the contract in finding 1 hereof, stated to have been made between the plaintiff and the defendant, but not otherwise, the defendant sold and delivered, and the plaintiff purchased, five thousand (5,000) barrels of said cement, at the rate of two and 56/100 dollars ($2.56) per barrel, and the plaintiff before the commencement of this action became indebted to the defendant therefor in the sum of $12,800 in United States gold coin. Of said sum of $12,800 no part has been paid saving and excepting the sum of $10,534.40 on account thereof, and there is due and payable to defendant from the plaintiff for said cement so sold and delivered the sum of $2,265.60, without interest. (6) With respect to the issues made by the allegations of the second counterclaim set up in the answer of the defendant, the court finds that the plaintiff is indebted to the defendant in the sum of $2,265.60, as in finding 5 hereof stated, for 885 barrels of Alsen's German Portland Cement sold and delivered by the defendant to the plaintiff, and being a part of the 5,000 barrels in findings 3 and 5 hereof, stated to have been sold and delivered by the defendant to the plaintiff. And from the foregoing facts the court finds the following conclusions of law: That plaintiff is entitled to judgment against the defendant for the sum of $2,876, less the sum of $2,265.60; that is to say, the plaintiff is entitled to judgment against the defendant for the sum of $610.40 and for its costs."

Vogelsang & Brown, for plaintiff in error.

E. S. Pillsbury and Alfred Sutro, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is an action to recover damages for an alleged breach of contract for the delivery of 5,000 barrels of cement, more or less. The contract is embodied in a letter from the plaintiff in error which reads as follows:

"Alsen's Portland Cement Warehouse, Manufacturers of Portland Cement. William Wolff & Co., California Agent, 329 Market Street, San Francisco.

"San Francisco, California, September 24, 1897.

"Colonel Geo. E. Gray, 1st Vice President Wells, Fargo & Co., City—Dear Sir: Referring to the conversation the writer, Mr. Baker, had with you this afternoon, we take pleasure in submitting to you our quotation on Alsen's German Portland Cement for use in the new Wells, Fargo Building, now in course of construction. We will name you a price for what you may require, on about 5,000 barrels, more or less, of two dollars and fifty-six cents ($2.56) per barrel, delivered at the building site Second and Mission Sts., in quantities to be designated by you. We will guaranty the Alsen Cement to be of standard quality, and subject to any reasonable tests you may call for.

"Very respectfully, William Wolff & Co.,
"Per Edmund Baker."

Upon receipt of this letter the offer therein made was orally accepted by the defendant in error.

The case was tried before the court without a jury. The findings

of fact and conclusions of law, as found by the court, are set out in the foregoing statement.

There are certain general elementary principles that have been elaborately discussed by counsel which may be briefly disposed of. The rule is well settled by the repeated decisions of the supreme court of the United States and by the circuit court of appeals that in all cases tried by the court without a jury the facts as found by the trial court are not subject to review by the appellate court. Where there are special findings of fact the only question to be considered in this connection is whether the facts found support the judgment. As was said in Lehnen v. Dickson, 148 U. S. 71, 77, 13 Sup. Ct. 481, 37 L. Ed. 373:

"The burden of the statute is not thrown off simply because the witnesses do not contradict each other and there is no conflict in the testimony. It may be an easy thing in one case for this court, when the testimony consists simply of deeds, mortgages, or other written instruments, to make a satisfactory finding of the facts, and in another it may be difficult, when the testimony is largely in parol, and the witnesses directly contradict each other. But the rule of the statute is of universal application. It is not relaxed in one case because of the ease in determining the facts, or rigorously enforced in another because of the difficulty in such determination. The duty of finding the facts is placed upon the trial court. We have no authority to examine the testimony in any case, and from it make a finding of the ultimate facts."

In Walker v. Miller, 8 C. C. A. 331, 332, 59 Fed. 869, 870, the court said:

"Neither the supreme court nor the court of appeals will undertake to determine in a case like the one at bar whether the special findings are supported by the testimony contained in the bill of exceptions, for to do so would be simply to review the decision of the trial court on questions of fact rather than law. By filing a written stipulation waiving a jury, the parties to the litigation may impose upon the circuit court the duty of making a general or special finding on questions of fact, but they cannot impose upon an appellate court a like duty. The finding of the trial court, whether it be general or special, has the same conclusive effect when the record is removed by writ of error to an appellate tribunal as a similar finding by a jury, and exceptions must be saved and presented in the same manner, either by objections to the introduction or to the exclusion of testimony, or by tendering declarations of law and obtaining a rule thereon. These several propositions are well established by repeated adjudications."

In so far as the assignments of error call for a review of the evidence, they will not, for the reasons stated, be considered. Many of the assignments, however, are based upon the proposition that the court erred in its findings of fact because "there is no evidence to justify the same." The dividing line in the contention of the respective parties as to the construction of the letter is whether, as claimed by the plaintiff, the contract was for a given amount, to wit, 5,000 barrels of cement, more or less, or whether, as claimed by the defendant in error, it was a contract for the delivery of such amount of cement as might be required by Wells, Fargo & Co. for use in the completion of its new building then in course of construction, and that the amount mentioned was a mere estimate of the amount that would be required.

There are 19 assignments of error, which, boiled down, only present for our consideration three questions: (1) Did the court err

in permitting the witness Gray (representing Wells, Fargo & Co.) to testify as to the conversation he had with Mr. Baker (representing the plaintiff in error)? (2) Is the contract, as specified in the letter, clear, plain, and unambiguous? (3) Did the court err in construing it?

The law is well settled that where the contract as written is clear, plain, and unambiguous it is error to admit parol evidence to vary, modify, or change it. The general rule is that the written contract merged all previous negotiations and conversations between the parties, and it is presumed in law to express the final understanding between the parties. On the other hand, it is equally well settled that if there is any uncertainty or ambiguity as to the meaning of the words used in the written contract, where it is based upon or refers to a conversation, parol evidence may be admitted, not to vary the terms of the contract, but to explain the sense in which the language in the writing was used. Such attendant and surrounding circumstances are competent evidence for the purpose of placing the court in the same situation and giving it the same advantage for construing the instrument as were possessed by the parties who executed it. The object or tendency of such evidence is not to contradict or vary the terms of the writing, but is for the purpose of enlightening the court so as to enable it to more fully understand the language employed therein. There can be no question on the point that the facts as found by the court sustain the judgment. The specific questions asked of the witness Gray and the answers given, to which objection is urged, are as follows:

"Q. State what your conversation was with Mr. Baker? A. The question Mr. Baker desired was that I would define accurately some number of barrels of cement that we would want. I told him I wanted his proposition for the cement for that building, and I could not give him a positive quantity; that the architect said that under certain conditions he would require about 5,000 barrels. That is what I told Mr. Baker; that if certain other conditions existed it would take a great deal more. On that statement to Mr. Baker he left my office, and went back to the office on Market street, as he said, and came back to me again with a written proposition, which is embodied in this letter, which I recognize, and that letter was received. * * * Q. Before offering that, Colonel Gray, I will ask you what, if anything, you told Mr. Baker, preliminarily, you contemplated doing with reference to a building, and why you were getting these bids? A. I told Mr. Baker my object was to get cement for the building,—the total amount of cement we required."

We are of opinion that the court did not err in admitting this testimony. It is argued that it is impossible to tell upon what particular ground the court rendered its decision, whether upon the oral testimony, the letter, or both. That is wholly immaterial. If the decision is correct, it should not be disturbed. The testimony of the witness Gray supports the findings of fact and conclusion of law reached by the court, and if it added any light as to the intention of the parties the court did not err in admitting it. If the contract, of itself, was susceptible of the construction given to it by the court, the aid thus given should not be ignored. The case should not be reversed unless it affirmatively appears that the contract is not susceptible of any such construction. The rules governing contracts

of this general character are well expressed by Mr. Justice Bradley in Brawley v. U. S., 96 U. S. 168, 171, 24 L. Ed. 622, 623:

"Where a contract is made to sell or furnish certain goods identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse, or all that may be manufactured by the vendor in a certain establishment, or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named with the qualification of 'about,' or 'more or less,' or words of like import, the contract applies to the specific lot; and the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it. * * * But when no such independent circumstances are referred to, and the engagement is to furnish goods of a certain quality or character to a certain amount, the quantity specified is material, and governs the contract. The addition of the qualifying words 'about,' 'more or less,' and the like, in such cases, is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure, or weight. If, however, the qualifying words are supplemented by other stipulations or conditions which give them a broader scope or a more extensive significancy, then the contract is to be governed by such added stipulations or conditions. As, if it be agreed to furnish so many bushels of wheat, more or less, according to what the party receiving it shall require for the use of his mill, then the contract is not governed by the quantity named, nor by that quantity with slight and unimportant variations, but by what the receiving party shall require for the use of his mill. And the variation from the quantity named will depend upon his discretion and requirements, so long as he acts in good faith."

We are of opinion that this cause comes within the third rule above stated. The contract was not to deliver any particular quantity of cement, but to deliver such an amount as might be required by Wells, Fargo & Co. for use in its new building then in course of construction. The quantity designated, "about 5,000 barrels, more or less," should be considered merely as an estimate of what the parties supposed might be required for use in the building. The plaintiff in error said, "We will name you a price for what you may require." The defendant in error, after using 5,000 barrels of the cement, notified the plaintiff in error of the additional amount required for use in its building, and the plaintiff in error refused to deliver any further quantity. Wells, Fargo & Co. was compelled to go into the open market and purchase the amount at an advanced price, and has been damaged in the extra sum it was compelled to pay. The views we have expressed are not in opposition to, but are in strict conformity with, the principles announced by the court in Budge v. Refining Co., 43 C. C. A. 665, 104 Fed. 498. That case came within a different rule from the present case, and the distinction between the rules was there explicitly recognized. There "the contract was not one in which the quantity of material to be delivered rested wholly in the will of him who was to receive it, nor was it one of those in which the contracting parties had in mind the construction of a particular work, and the supply of the necessary material therefor," but was one where the work itself furnished "to both parties the ultimate measure of the quantity which the contract contemplated."

The judgment of the circuit court is affirmed, with costs.