## S. M. HAMILTON COAL CO. v. NEW YORK & PHILADELPHIA COAL & COKE CO.

### (Circuit Court of Appeals, Second Circuit. March 10, 1908.)

### No. 180.

EVIDENCE—WRITTEN CONTRACT—AMBIGUOUS TERMS—EXPLANATION BY PAROL.
> Where, in an action for breach of a contract to deliver a certain number of tons of "our Big Vein Cumberland coal" per month, the parties were not agreed as to the meaning of such phrase, the court erred in confining parol evidence to explain the same to the meaning of the term "Big Vein Cumberland coal," eliminating the word "our," since, the contract being ambiguous, the evidence admitted to explain it should be sufficiently broad to show the real intention of the parties.
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2129, 2131.]

In Error to the Circuit Court of the United States for the Southern District of New York.

Writ of error to review a judgment of the Circuit Court entered upon the verdict of a jury in favor of the defendant in error, who was the plaintiff below. In the following opinion the parties are designated as in the court below.

Frederick Dallam and Herbert Barry, for plaintiff in error.
Harold W. Hardon, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This was an action to recover damages for the alleged breach of a written contract dated September 19, 1905, wherein the defendant agreed to sell and deliver to the plaintiff, beginning October 1st of that year, "* * * (1,500) fifteen hundred to (2,000) two thousand tons, buyers option, per month for one year, of our Big Vein Cumberland coal. * * *" For some time after the contract became operative, the defendant delivered and the plaintiff accepted coal of a certain grade under it. A dispute then arose as to the kind of coal designated by the phrase "our Big Vein Cumberland" in the contract, the outcome of which was this litigation.

The meaning of the phrase "our Big Vein Cumberland coal," therefore, presented the question of primary importance upon the trial. The court, however, practically ignored the word "our," and treated the contract as if simply calling for the delivery of "Big Vein Cumber-

land coal," as that term should be explained by extrinsic evidence. Accordingly testimony was offered to establish both the geological and commercial meanings of the term. This tended to show that scientifically Big Vein Cumberland coal is coal from the "upper productive coal measures," and is now taken from the Pittsburgh seam—as it is called—in Pennsylvania. The testimony as to the commercial meaning of the term varied; some witnesses testifying that it merely designates a certain grade of coal. But the defendants, insisting upon including the word "our" in the term, desired to go further with the parol evidence, and offered to show that in their negotiations prior to the execution of the contract the parties had agreed upon the grade of coal to be delivered under the designation "Hamilton's Big Vein Cumberland coal"; and also offered to prove the meaning attached by them to the phrase "our Big Vein Cumberland coal." The trial court rejected the defendant's offer and excluded the evidence.

This action of the court in confining the parol evidence to the meaning of the term "Big Vein Cumberland coal" was erroneous. The phrase used in the complaint is "our Big Vein Cumberland coal," and there was no more reason for omitting the word "our" from it than any other word. The phrase "our Big Vein Cumberland" was ambiguous even after the reception of evidence explaining the meanings of the last three words. It was capable of several applications: (1) It might have been used descriptively as designating the particular coal taken from some mine in the Pittsburgh seam which the defendant dealt in. (2) It might have meant coal of a grade corresponding to that from the Pittsburgh seam, and, perhaps, taken in its immediate vicinity, which the defendants designated in their business and to their trade as "Hamilton's Big Vein Cumberland coal." (3) It might have meant coal which in this particular transaction the parties had agreed should be designated as "our [Hamilton's] Big Vein Cumberland coal." The contract being ambiguous, parol evidence was proper to explain its meaning. And, when such evidence came in, it should have been along sufficiently broad lines to show what was meant by the entire phrase used in the contract to resolve the ambiguity and to show the real intention of the parties. Especially should this have been the case with respect to a contract which itself referred to previous conversations. That parol evidence of prior negotiations is admissible for these purposes is settled by numerous authorities. The following cases are merely illustrative: In Kilby v. Hinchman-Renton Fire Proofing Co., 132 Fed. 957, 961, 66 C. C. A. 67, the Circuit Court of Appeals for the Eighth Circuit said:

"* * * Where, in the application of a contract to its subject-matter, an ambiguity or uncertainty arises which cannot be removed by an examination of the agreement alone, parol evidence of the circumstances under which it was made and of statements made in the negotiations which preceded it may be admitted to resolve the ambiguity, and to prove the real intention of the parties."

In Wolff v. Wells, Fargo & Co., 115 Fed. 32, 35, 52 C. C. A. 626, the Circuit Court of Appeals for the Ninth Circuit said:

"* * * If there is any uncertainty or ambiguity as to the meaning of the words used in the written contract, where it is based upon or refers to a

conversation, parol evidence may be admitted, not to vary the terms of the contract, but to explain the sense in which the language in the writing was used. Such attendant and surrounding circumstances are competent evidence for the purpose of placing the court in the same situation and giving it the same advantage for construing the instrument as were possessed by the parties who executed it. The object or tendency of such evidence is not to contradict or vary the terms of the writing, but is for the purpose of enlightening the court so as to enable it to more fully understand the language employed therein."

In Western Union Tel. Co. v. American Bell Tel. Co. (C. C.) 105 Fed. 684, 687, Judge Colt said:

" * * * The case presents a contract which is capable of two interpretations. This being true, it was clearly proper for the master to admit evidence of previous negotiations and surrounding facts and circumstances relating to the subject-matter of the contract, in order to reach an interpretation of the language used in accordance with the understanding of the parties at the time the contract was entered into. That such evidence is admissible where a contract is capable of two interpretations and a doubt exists as to the true meaning is well established."

And in the early case of Hart v. Hammett, 18 Vt. 127, it was held:

"When technical words are used in a written agreement, parol evidence is admissible to show their meaning; and, if it thereby appears that the words used may have different applications, parol evidence is admissible to prove what was said by the parties at the time of the execution of the written agreement, for the purpose of showing the sense in which they understood the words."

The provisions of the contract in suit being ambiguous, it was error to exclude the evidence offered by the defendant to explain their meaning.

Judgment reversed, and cause remanded for a new trial.