## MARYLAND DREDGING & CONTRACTING CO. v. COPLAY CEMENT MFG. CO.

(District Court, E. D. Pennsylvania. May 14, 1920.)

No. 6022.

Sales ☞71(4), 411—Contract for sale of cement governed as to quantity by requirements of buyer; necessary to plead buyer's requirements.

A contract for the sale and purchase of approximately 225,000 barrels of cement, to be used by the buyer exclusively in the construction of a government dry dock, *held* one in which the quantity is determined by the requirements of the buyer, acting in good faith, in the construction of the dock; and in an action by the buyer for breach of the contract by failure to deliver it must allege and prove such requirement.

At Law. Action by the Maryland Dredging & Contracting Company against the Coplay Cement Manufacturing Company. On motions by defendant for new trial and in arrest of judgment. Motion for new trial sustained.

George Wharton Pepper, of Philadelphia, Pa., Joseph N. Ulman, of Baltimore, Md., and Isaac A. Pennypacker, of Philadelphia, Pa., for plaintiff.

Joseph W. Bailey and Joseph E. Davies, both of Washington, D. C., and Abraham Israel and Russell Duane, both of Philadelphia, Pa., for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMPSON, District Judge. The contract in this case contains the following provisions:

"That the cement company agrees to sell and the buyer agrees to purchase Saylor's Portland cement as follows: 225,000 (approx.) barrels in carloads f. o. b. cars, buyer's siding, League Island Navy Yard, Phila., Pa. * * *

"The cement covered by this agreement is purchased and sold with the understanding that it will be used only and exclusively in the construction of the particular operation mentioned below: For total requirement of Portland cement in the construction of dry dock No. 3, League Island Navy Yard, Phila., Pa. * * *

"The quantity of Saylor's Portland cement mentioned is for use in the work described, and if buyer shall sell or otherwise dispose of any portion of said cement, or use portion thereof in any work other than described herein, or fail to comply with terms of payment or any of the conditions and limitations in this agreement, the cement company may at its option decline to make further deliveries hereunder; the buyer remaining liable for all unpaid accounts. * * *

"In the event the general contract for the construction of the dry dock herein mentioned is not executed between the United States government and the buyer, then this contract shall not be binding upon the buyer, anything to the contrary herein notwithstanding, and shall become void as of the date of its execution."

The defendant's first reason in arrest of judgment is as follows:

"1. The plaintiff's statement of claim fails to disclose a cause of action. The contract sued upon is one whereby plaintiff contracted to purchase from defendant, and defendant contracted to sell and deliver to plaintiff, such an amount of Saylor's Portland cement as would be required for the construction of dry dock No. 3, League Island Navy Yard, Philadelphia, Pa. The plaintiff's statement fails to set forth the amount of cement required for the construction of said dry dock No. 3."

Reasons for a new trial to similar effect were presented. The point raised by these reasons was not raised by demurrer to the statement of claim. There was no motion for nonsuit. Counsel for defendant did not press for a ruling of the court upon his oral motion for binding instructions, nor was any written request for binding instructions contained in points submitted by defendant. No exception was taken covering any question of binding instructions, or pertinent to the point now raised.

A careful examination of the record has not satisfied me of any substantial error upon which the defendant is entitled to a new trial and the only question for consideration is whether the verdict in the large sum of $215,416.51 should stand, in view of the failure of the plaintiff to allege or prove that the total quantity of 225,000 barrels of cement was required in the construction of dry dock No. 3, for which only and exclusively the cement covered by the agreement was to be used. In Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622, Mr. Justice Bradley, in delivering the opinion of the court, said:

"From an examination of the authorities, it seems to us that the general rules which must govern this case may be expressed as follows: Where a contract is made to sell or furnish certain goods identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse, or all that may be manufactured by the vendor in a certain establishment, or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named with the qualification of 'about,' or 'more or less,' or words of like import, the contract applies to the specific lot; and

the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it. In such cases, the governing rule is somewhat analogous to that which is applied in the description of lands, where natural boundaries and monuments control courses and distances and estimates of quantity.

"But when no such independent circumstances are referred to, and the engagement is to furnish goods of a certain quality or character to a certain amount, the quantity specified is material, and governs the contract. The addition of the qualifying words, 'about,' 'more or less,' and the like, in such cases, is only for the purpose of providing against accidental variations arising from slight and unimportant excesses or deficiencies in number, measure, or weight. If, however, the qualifying words are supplemented by other stipulations or conditions which give them a broader scope or a more extensive significancy, then the contract is to be governed by such added stipulations or conditions. As, if it be agreed to furnish so many bushels of wheat, more or less, according to what the party receiving it shall require for the use of his mill, then the contract is not governed by the quantity named, nor by that quantity with slight and unimportant variations, but by what the receiving party shall require for the use of his mill; and the variation from the quantity named will depend upon his discretion and requirements, so long as he acts in good faith."

In Staver Carriage Co. v. Park Steel Co., 104 Fed. 200, 43 C. C. A. 471, the Circuit Court of Appeals for the Seventh Circuit affirmed the District Court in sustaining a demurrer to a declaration based on a covenant for sale and delivery of "all the tire steel of good and suitable quality which will be used in buyer's works prior to September 1, 1899, not to exceed 14,000 sets, nor to be less than 10,000 sets," to be specified by the buyer "for carload shipments, and in reasonable time for seller to make required deliveries, but all not later than 15 days before the expiration of this contract." The demurrer was sustained upon the ground that there was no averment of the fact that the quantity of steel ordered was needed for the use of the works within the term specified by the contract.

In Wolff v. Wells, Fargo & Co., 115 Fed. 32, 52 C. C. A. 626, where suit was brought on an alleged breach of contract for the sale of cement to be used in the construction of a certain building, the seller named a price "for what you may require, on about 5,000 barrels, more or less," and it was held that the contract was not one to deliver any particular quantity, but to deliver so much as might be required in the construction of the building; the designation of "about 5,000 barrels, more or less," being merely the estimate of the parties as to the quantity which would be required.

In the recent case of Ruth-Hastings Glass Tube Co. v. Slattery, 266 Pa. 288, 109 Atl. 695, it was held that, if the real purpose of an agreement is to enable a vendee to get the articles for a particular use, he is entitled, if acting in good faith, to the quantity needed, and to that only, though it may be much more or less than the amount stated.

In the present case there was no averment in the statement of claim that 225,000 barrels of cement was the quantity required for the construction of the dry dock, nor was there proof at the trial that that quantity was required. The contract clearly falls within the class where the quantity, although approximately stated, is to be determined

according to the plaintiff's requirements for the construction of the dry dock, for it is agreed that it shall not sell it, nor use it for any other purpose, and whether the quantity stated is more or less than the quantity it is entitled to call for depends upon the requirements of the contract so long as it acts in good faith. While the question of the sufficiency of the statement of claim should have been raised in the affidavit of defense and disposed of before trial, yet the interests of justice require that the verdict be set aside.

A new trial will be granted.

The motion in arrest of judgment is denied.