**OHIO VALLEY PULLEY WORKS, Inc., v. ONEIDA STEEL PULLEY CO.**

(Circuit Court of Appeals, Second Circuit. January 12, 1921.)

No. 96.

1. **Principal and agent** ⟪29—Agent not entitled to renewal of contract.

A contract gave plaintiff exclusive agency for sale of goods made by defendant in certain territory for a specified term, and provided that it should be renewed for an additional five years, if the net sales "shall have amounted to the sum of $50,000 for the year 1915, and shall have increased 10 per cent. each year for the two years following, and thereafter shall have showed 5 per cent. net increase annually during the life of the contract." It further provided that, in the event of a general depression in business, "the said second party shall not be required to make the yearly increase in sales as provided herein during the period in which said depression occurred." *Held*, that the latter provision did not apply

to sales during 1915, and that net sales of $50,000 during that year were an essential requirement to the right of plaintiff to a renewal of the contract.

2. Contracts ⚖⇒169—Not subject to construction by extrinsic circumstances, where language is plain.

The conditions and circumstances surrounding the making of a written contract may be considered, to determine the intention of the parties, where the contract is ambiguous; but, where its language is clear, the parties are bound by its terms.

In Error to the District Court of the United States for the Northern District of New York.

Action at law by the Ohio Valley Pulley Works, Incorporated, against the Oneida Steel Pulley Company. Judgment for defendant, and plaintiff brings error. Affirmed.

H. Duane Bruce, of Syracuse, N. Y., and Worthington, Cochran, Browning & Reed, of Maysville, Ky., for plaintiff in error.

Stewart F. Hancock, of Syracuse, N. Y., and Zane, Morse & Marshall, of Chicago, Ill., for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error sued in this action for breach of contract. After an amended complaint was served, a demurrer was interposed, and upon that demurrer a motion for judgment was then made. Judgment was directed for the defendant. A writ of error was then sued out and the case is here, upon assignment of errors, on the claim that the court below erred in holding that the plaintiff in error was not entitled to recover for the breach of contract sued on, and this for the reason that the complaint did not state sufficient facts to constitute a cause of action.

The plaintiff in error is a corporation organized under the laws of the state of Kentucky, and the defendant in error is a corporation organized under the laws of the state of New York. The action is to recover $100,000 damages for the breach of the contract which is made a part of the complaint. It is the claim of the plaintiff in error, through its complaint: That it was engaged in the business of the manufacture and sale of transmission machinery known as wood split pulleys. That it had a selling organization throughout the United States, and a large trade therein, and enjoyed a business reputation of value in the marketing and selling of transmission machinery. That the defendant in error was engaged in manufacturing and selling steel pulleys and other transmission machinery, and that negotiations were entered into in the year 1913 between the parties, to the end that the plaintiff in error should become the defendant in error's sole and exclusive selling agent in certain territory throughout the West and South for the steel pulleys and transmission materials manufactured by the defendant in error; and on the 15th of December, 1913, the written contract sued on was entered into. Under the terms of this contract, the defendant in error agreed to appoint and employ the plaintiff in error, during a stated period, the exclusive agent for the

sale of the steel pulleys and other transmission materials manufactured by the defendant in error in the territory specified in the contract, and in consideration of the agreements and promises contained in the contract, during the year 1912, the defendant in error had sold, in the territory covered by the contract, steel pulleys and transmission materials manufactured by it to the approximate amount of $16,417.54, and in the year 1913 sold the same articles in the same territory amounting to $27,991.67. The amount of the sales were known to both parties at the time of the execution of the contract, December 15, 1913, and that the contract was entered into for the purpose of enabling the defendant in error to avail itself of the plaintiff in error's agencies and connections and business reputation in the territory specified in the contract, with a view of an increase in the business therein. That, pursuant to the terms of the written contract, the plaintiff in error entered upon the performance thereof, to the best of its ability marketed the products of the defendant in error within the territory, and expended considerable time and labor and money in the effort. That subsequent to the execution of the contract on December 15, 1913, changes were made in the agreement, and on account of said changes it was deemed advisable by the plaintiff in error and defendant in error to execute a new contract, which should supersede the contract of December 15, 1913; and the parties did, on the 9th of November, 1914, contract in writing. This contract is made a part of the complaint. It bears the date of May 7, 1914, but it is alleged that it was not in fact executed on that day.

The complaint further alleges that the terms were agreed upon by the representatives of the parties in the state of Kentucky on a day in October, 1914, and forwarded to the defendant in error in the state of New York, whereupon it was duly executed and subscribed on the 9th of November, 1914. It is alleged: That, when formally executed on November 9, 1914, the plaintiff in error had sold under the previous contract of December 15, 1913, in the territory specified, steel pulleys and transmission materials to the amount of approximately $35,000. The amount of these sales were known to both plaintiff and defendant in error at the time of the agreement of the terms of May 7, 1914. That the terms of this superseding contract appointed and employed the plaintiff in error, during the period mentioned therein, its sole and exclusive agent for the sale, in the territory specified in the contract, of steel pulleys and other transmission materials manufactured by the defendant in error. Payment was to be made for its services as such agent pursuant to the commissions specified in the contract as set forth therein.

It is further alleged that the terms of the contract should continue for and during the period from the date of the contract of May 7, 1914, to December 31, 1918, and also thereafter for a period of five additional years, provided the net sales made by the plaintiff in error as such agent amounted to $50,000 for the second year of the original term of said contract, to wit, the calendar year 1915, and increased 10 per cent. each of the years 1916 and 1917, and increased thereafter at the rate of 5 per cent. each year, but provided, further, that such

requirement and condition as to the amount of said increases in the sale as aforesaid be suspended and inoperative during any period of general business depression. It is further alleged that the amount of the sales made by the plaintiff in error for the year 1914 was $37,-450.47, for the year 1915 $26,094.63, and for the year 1916 $57,433.71, to which should be added the sum of $14,835.38, which last-named amount was the aggregate of sales made by the defendant in error in the states of Arizona, Utah, and Colorado, upon which the plaintiff in error received no commission, but which was required to be included in ascertaining the total volume of business done by the plaintiff in error in accordance with a subsequent agreement made and entered into by the plaintiff and defendant in error in writing on March 27, 1916, a copy of which is made part of the complaint. The amount of the sales made by the plaintiff in error was $27,979.33 from January 1, 1916, to March 31, 1916.

It is alleged: That during the year 1915, and at the time of the agreement as to the terms of the contract of May 7, 1914, there was a general business depression. That because of such general business depression the plaintiff in error, in accordance with the terms of the contract, was not required to make sales of defendant in error's goods thereunder in the amount of $50,000 in the year 1915, in order to be entitled to have said contract continued in force during the original term thereof, or in order to effect an extension thereof for a period of five years from December 31, 1918, and further that the failure to make sales in said amount during said period was due to such depression. It is further alleged that the amount of sales made by it under the contract during 1916, increased more than 10 per cent. and further it is alleged that in March, 1917, the Dodge Steel Pulley Company, a corporation, acquired control of the defendant in error by the purchase of its capital stock and induced the defendant in error to refuse to carry out its contract with the plaintiff in error, or permit the plaintiff in error to continue to act as its selling agent as provided by its contract, and on March 28, 1917, an agreement was entered into between the plaintiff in error and defendant in error and the Dodge Steel Pulley Company, whereby it was agreed that, in consideration of an abrogation of its aforesaid contract dated May 7, 1914, for a period of time between April 1, 1917, and December 31, 1918, the defendant in error and the other corporate parties to said agreement pay to this plaintiff in error a commission of 6 per cent. upon all sales of steel pulleys and bushings made in the territory described in the aforesaid contract dated May 7, 1914, and the amendments and additions thereto. A copy of this contract is referred to and made a part of the complaint, but it is alleged that it was expressly stipulated in this agreement of March 28, 1917, that the same would not prejudice, abrogate, change, or affect the rights of the plaintiff in error under the contract with the defendant in error.

It is further alleged that between the 1st of April, 1917, and the 31st of December, 1917, and the 1st of January, 1918, and the 31st of December, 1918, the amounts of sales made in the territory covered by the agency of the plaintiff in error under its contract with the de-

fendant in error, were for said periods of time, respectively, $65,033.-67, and $104,288.33.  It is then pleaded that the plaintiff in error was excused from any default in the selling of the requisite amount of merchandise by the defendant in error's waiver, when it entered into the contract of March 28, 1917, with the Dodge Company.  The allegation, is further, that the conditions and events specified and agreed to in the contract between the plaintiff and defendant in error, as conditions precedent to the right of the plaintiff in error to five additional years of agency from December 31, 1918, did occur and happen, and that according to the terms of the contract the plaintiff in error's employment as an agency was extended and continued by virtue of the agreement between the parties for five years beginning December 31, 1918.  Due performance of the conditions and provisions of the contract on the part of the plaintiff in error is pleaded, and a breach of the contract is alleged in the refusal of the defendant in error to permit the plaintiff in error to sell the goods of the defendant in error for the term of five years beginning December 31, 1918, and as a result thereof damages are demanded in the sum of $100,000.

[1] By the demurrer these facts are deemed to have been admitted.  The first ground of demurrer applies to the amount of sales made by the plaintiff in error in the year 1915.  The contention of the defendant in error is that the facts as pleaded in the complaint do not set forth a cause of action.  The chief reliance is placed upon the allegations of the complaint, which set forth the volume of sales made by the plaintiff in error during the periods here before referred to.  A question of construction of the terms of the contract is involved. Among other things, the contract provides:

"This contract shall remain in full force and effect until December 31, 1918, and shall be renewed at the expiration of this period for an additional five (5) years, provided that the net sales made by the party of the second part shall have at the end of the second year (December 31, 1915) amounted to the sum of $50,000 for the year 1915, and shall have increased ten (10) per cent. each year for the two years following (1916 and 1917), and thereafter shall have showed five (5) per cent. net increase annually during the life of the contract.  *  *  *

"It is further agreed that, in the event of a general depression in business, should such a condition prevail, the said second party shall not be required to make the yearly increase in sales as provided herein during the period in which the said depression occurred."

By the complaint it appears that in the year 1915 the sales were $26,094.63, and not $50,000.  The defendant in error contends that the meaning of the contract is that, unless $50,000 worth of sales were made in 1915, the plaintiff in error has not won its right to an extension of five years, and that therefore this action, which is brought for an alleged breach in failing to extend the contract for five years, cannot be maintained.  The first excuse pleaded for nonperformance is the general business depression, and the plaintiff in error inquires: Does the provision relative to the effect of general business depression apply to the business done in the year 1915?  It alleged that the sales in 1915 were $26,094.63, and further that, because of general business depression in the year 1915, the plaintiff in error's failure to sell the

stipulated amount of $50,000 was due to such business depression. It claims, therefore, that the failure to sell the stipulated amount was excused by reason of the provisions above quoted.

Defendant in error's contention is that the obligation to sell $50,-000 of its product in 1915 was absolute, and that the business depression clause of the contract was not applicable to such year, but to subsequent years, and applied only, as referred to in the contract, to a yearly increase, which must be maintained in order to carry out the terms of the contract on the part of the plaintiff in error. The argument is advanced that the contract must be construed as a whole, and when this is done it is meant that a minimum business of $50,000 in 1915 . was intended to be a provision for a yearly increase, as was the percentage of increase required for the years 1916, 1917, and 1918. The contract does not require any fixed amount of sales for the year 1914, and it is further argued that there was no requirement of any amount of business for 1914, but, whatever may have been the business in 1914, it must be $50,000 for the year 1915. This view is said to be obtainable, if the circumstances surrounding the parties at the time of the execution of both the original contract and the subsequent agreement of May 7, 1914, be viewed, and we are prevailed upon to consider the circumstances surrounding the execution of the agreement, and it is argued, if we do this, we are led to the conclusions so strongly urged by the plaintiff in error.

[2] But there are well-fixed limitations which must guide us in construing the terms and obligations of the contract. Courts, in the construction of contracts, look to the language employed. The parties chose their words to express their intentions, and it is assumed that they do so in view of all the surrounding circumstances in which they are involved at the time of the execution of the contract. If the language be clear, it is conclusive. There can be no construction, where there is nothing to construe. This is the law of contracts. United States v. Hartwell, 6 Wall. 385, 18 L. Ed. 830. It is only where the contract is ambiguous that parol evidence is proper to explain its meaning. When parol evidence is admitted, it is to show what was meant by the particular phrase used in the contract, and thus to resolve the ambiguity and to show the real intention of the parties. Where the contract itself refers to previous conversations, the parol evidence of prior negotiations is held to be admissible for the purpose of ascertaining the intentions. Hamilton Coal Co. v. N. Y. & Phila. Coal & Coke Co., 160 Fed. 75, 87 C. C. A. 231. The court (Eighth Circuit), in Kilby Mfg. Co. v. Hinchman-Renton Fireproofing Co., 132 Fed. 957, 66 C. C. A. 67, said:

" * * * Where, in the application of a contract to its subject-matter, an ambiguity or uncertainty arises which cannot be removed by an examination of the agreement alone, parol evidence of the circumstances under which it was made, and of statements made in the negotiations which preceded it, may be admitted to resolve the ambiguity, and to prove the real intention of the parties."

If there is uncertainty or ambiguity as to the meaning of words used in the writing itself, where it is based upon or refers to a con-

versation, evidence of a parol character is admissible, not to vary the terms of the contract, but to explain the sense in which the language and writing is used. Such surrounding or attending circumstances may competently be admitted for the purpose of placing before the court the same situation and giving it the same advantage for construing the instrument as was possessed by the parties to the contract when they executed it. Permitting such evidence does not contradict or vary the terms of the writing, but is admitted for the purpose of enlightening the court, so as to enable it to more fully understand the language employed. Wolff v. Wells Fargo Co., 115 Fed. 32, 52 C. C. A. 626. And where technical words are used in a writing, parol evidence is admissible to show their meaning, and, if it thereby appears that the words used may have different application, parol evidence is admissible to prove what the parties said at the time of the execution of the writing for the purpose of showing the sense in which they used the words. And where the contract is capable of two interpretations, and a doubt exists as to its true meaning, it is proper to admit evidence of previous negotiations and surrounding facts relative to the subject-matter of the contract in order to reach a true understanding of the parties at the time the contract was entered into Western Union Tel. Co. v. Amer. Bell Tel. (C. C.) 105 Fed. 687. Such permission to offer parol evidence is solely for the purpose of aiding in the true construction of the written instrument, and not for the purpose of adding to or taking from any of its provisions— the latter never being permissible. Northern Assur. Co. v. Grand View Building Asso., 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; Cameron Mill & El. Co. v. Orthwein, 120 Fed. 463, 56 C. C. A. 613. But the rule of construction, however, always prevails that the intention of the parties is to be adduced from the language employed by them and the terms of the contract when unambiguous, are conclusive. Words cannot and should not be read into a contract, which import an intent wholly unexpressed when the contract was executed.

We think that the parties clearly expressed themselves and there is no ambiguity in the terms of the contract here under consideration. It is admitted by the amended pleadings that the sales of 1915 were but $26,094.63, when they should have been $50,000. We think the parties intended that, no matter what the volume of business carried on in 1914, it was incumbent upon the plaintiff in error to reach a minimum of $50,000 in 1915, and then to continue percentages of increase as expressed in the contract, in order to win the extension of five years from December 31, 1918. We think that the clause as to excusable noncompliance because of business depression had no application to the year 1915, and since there is no valid excuse pleaded for nonperformance in 1915, upon the face of the complaint, the plaintiff in error had not lived up to the terms of the contract and is not entitled to the five-year extension. When the parties made the contract on May 7, 1914, although it was not actually signed until November 9, 1914, the conditions of business prevailing in 1914 they are charged with notice of. We find no technical terms employed in the language of the paragraphs we are asked to construe; and we be-

lieve that, if we enforce the construction argued for by the plaintiff in error, we would write into the contract conditions which the parties did not have in mind at the time of its execution.

The plaintiff in error further urges that it was excused from performance of the required volume of business or sales made in 1917 and 1918, and this for the reason that it is said, by reason of the contract of March 28, 1917, the necessity of making the sales required for 1917 and 1918 was excused. Since we have concluded that the first ground of demurrer is good, we may disregard this claim. But the plaintiff in error urges that it was prevented from making the increase in the number of sales required under the contract of May 7, 1914, for or during the years 1917 and 1918, solely because the defendant in error waived the same by the contract of March 28, 1917. It appears that the Dodge Steel Pulley Company acquired control of the defendant in error, and, it is pleaded, induced the defendant in error to refuse to carry out its contract with the plaintiff in error or to permit the plaintiff in error to continue to act as its sole agent as provided for in the contract of May 7, 1914, but did, in the agreement of March 28, 1917, enter into a contract with the plaintiff and defendant in error, and other allied corporations of the Dodge Steel Pulley Company, whereby it was agreed that plaintiff in error be permitted to continue under the terms of the contracts of 1917 and 1918, and that the failure to make the increased sales for said years was expressly waived by the terms of the contract. The contract of March 28th provided:

"This agreement shall not in any way prejudice, abrogate, change, alter, or affect any of the rights of the parties hereto under the aforesaid contract of May 7, 1914, for or during the five (5) years succeeding December 31, 1918."

And further it provided:

"It being the intention of the parties * * * to leave the rights of all parties under the aforesaid contract of May 7, 1914, unchanged, except during the time hereinbefore mentioned as provided for herein, and this agreement shall not be deemed to be in any way a recognition by the parties of the first and second part that the party of the third part has any right to continue said contract of May 7, 1914, beyond December 31, 1918, nor a waiver of the party of the third part to continue said contract beyond the said 31st day of December, 1918."

It is apparent from the language of this contract that neither party intended to waive any obligation to be performed by the parties thereto. There is no express waiver which will aid the plaintiff in error. The contract did abrogate, from April 1, 1917, to December 31, 1918, the right of the plaintiff in error to sell, and the plaintiff in error was thus left with no power to sell during that period, and hence the plaintiff in error could not make sales for 1917 and 1918 of sufficient amount to perform the terms of the contract of May 7, 1914; but we do not think the contract in any wise excused the obligation, on the part of the plaintiff in error, to make the sales for the year 1915, and the subsequent increases in order to win the extension of five years provided for in the contract of May 7, 1914. The subsequent contract, while

abrogating the right of sale during 1917 and 1918, leaves the rights of the parties under the contract of May 17, 1914, as written and fixed in that contract. We therefore find no error in the ruling of the court below.

The judgment below is affirmed.